## J. S. BEARDEN v. THE STATE.

### No. 2696.   Decided March 18, 1903.

**1.—Continuance.**

On an application for continuance, considered on motion for new trial, where it appeared that the facts sought to be proved by the absent witness had been proved by two other witnesses on the trial, and said facts were not controverted, held, the continuance will be considered properly overruled.

**2.—Murder—Expert Testimony as to Distance.**

On a trial for murder, an expert, who has qualified himself as to the use and range and scattering of shots fired from a shotgun, may give his opinion, from the extent to which the shot scattered, as to the distance the parties were from each other at the time the shot, which were squirrel shot, were fired from a muzzle loading shotgun.

**3.—Same.**

It is admissible to prove by an expert to what extent shot will scatter, fired at various distances, from a muzzle-loading shotgun.

**4.—Same—Defendant as a Witness—Impeachment of.**

On a trial for murder, the credibility of defendant, who testified in his own behalf, may be attacked by showing that at one time he had been indicted for cattle theft.

**5.—Same—Evidence—Reputation of Deceased as a Man of Peace.**

On a trial for murder, where the State had proved by a witness that deceased's reputation was good; and while it was competent to prove, on cross-examination of said witness, that he had heard of numerous difficulties de-

ceased had had, it was not permissible to prove by the witness that deceased had been prosecuted for those difficulties.

**6.—Same—Manslaughter—Assault and Battery—Charge.**

On a trial for murder, where the court, in charging upon manslaughter, instructed the jury that an assault and battery was adequate cause to reduce the offense to manslaughter, it was not error to fail, in said charge, to define assault and battery.

**7.—Same—Charge as to Threats, etc.**

On a trial for murder, a charge that certain threats and overt acts of deceased would be adequate cause to reduce the offense from murder to manslaughter, was favorable to defendant and could not be complained of, because defendant had not relied on these threats and acts as a defense.

**8.—Same—Defense of Property—Self-Defense.**

On a trial for murder, where it appeared that deceased continued to invade defendant's premises against his consent, and in spite of his remonstrances; and on the occasion of the killing went on said premises and approached defendant with words and acts causing defendant to apprehend danger of serious bodily injury imminent and pending, at the hands of deceased, whereupon defendant shot and killed him, defendant should be acquitted on self-defense.

**9.—Same—Charge.**

If deceased invaded defendant's premises against his consent and in spite of his remonstrances, and was endeavoring forcibly to eject defendant from said premises, and defendant, having exhausted all other means except retreating to prevent deceased from forcibly driving him from said premises, shot and killed deceased, he was justifiable in so doing, and should be acquitted, and the court did not err in so instructing the jury.

**10.—Same—Requested Instructions.**

On a trial for murder, where it appeared that defendant fired two shots, the second being the fatal one, and defendant requested the court to instruct that, if defendant was suffering such bodily injury, or mental anguish caused by deceased, as rendered him incapable of cool reflection, and he fired the second shot under such conditions, he should be acquitted, even though at the time deceased had desisted from any further attack upon him; which instruction the court refused to give, but in lieu thereof told the jury that if said shot was fired in sudden transport of passion, aroused by adequate cause, then defendant would be guilty only of manslaughter. Held, the charge was sufficient and defendant could not complain.

**11.—Same.**

On a trial for murder, where it appeared that defendant fired two shots, the second of which was fatal, his guilt depends not upon the number of shots fired, but upon his motive and criminal intent at the time of shooting; hence, it is immaterial whether he resolved to fire both shots before firing either.

**12.—Improper Conversation by Deputy Sheriff with Juror.**

While it is improper for deputy sheriffs to converse with jurors, a presumption that such conversation was injurious to defendant will not be indulged in the absence of proof as to the nature of said conversation.

Appeal from the District Court of Palo Pinto. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Lovie Bearden (his brother), on the 7th day of August, 1902, by shooting him with a gun.

Defendant and deceased were alone at the time of the shooting— there were no eyewitnesses. The evidence shows that defendant had leased the tract of land, some distance from his home, where the killing occurred, and there was a well upon the place. Deceased was occupying a place close by. His fence was 140 or 150 yards from the well and he had watered his stock at this well. It seems that deceased and de-

fendant's sons, who had been staying on the rented premises, had had trouble about a tub to water their stock in, which defendant had sent to the well. And they had also had other troubles, in one of which, deceased had whipped one of defendant's boys. These troubles occurred while defendant was at home in attendance on his sick wife. As a result of the troubles, defendant had ordered deceased not to come upon the premises any more; had refused to permit him any longer to water his stock at the well, and had nailed up his gate and fences against deceased, which deceased pulled down. On the morning of the killing, the parties met near the well, at about 11 a. m., defendant having his double-barreled shotgun, which was loaded with bird and squirrel shot, with him; and which he testified he always took with him when he went to the rented place to work. He testified: "I saw Lovie coming from the direction of the well; he said, 'I tore that God-damned gate down again.' I told him to stay on his own side of the fence; he crawled through the fence and picked up two rocks and said: 'God damn you, I'll kill you.' He kept coming. I kept backing; he threw the rocks and hit me on the leg with one and in the side with the other. He then picked up two more and said, 'God damn you, I'll kill you.' He kept coming and I kept backing and telling him to get back on his own side of the fence; he threw the third rock and just brushed the side of my head, turning my hat partly around; he was now in about eight or nine feet of me, and had the other rock up ready to throw, when I cocked both barrels of my gun and fired. I fired the right-hand barrel first, and then as soon as I could get my finger to the trigger of the other barrel I fired that one. He was about eight or nine feet of me when I fired the first shot; couldn't tell how close he was when I fired the second shot; he was advancing on me and was very close, I reckon. Lovie fell there. I went through the gate, fastened it, took my horses to the house, fed them, ate my dinner and then went and unloaded my posts. I went to the house, fed my team, hauled my posts and unloaded them, and then went to town to find French. Saw Dr. Riddle, told him about my trouble; told him I was looking for officers. He told me I was on the right track. Told him I did not have sense enough to know what to do. I went back and unloaded my posts, and came back and saw French."

This is a sufficient statement of the evidence showing the facts immediately attendant upon the homicide. The questions discussed in the opinion need no further illustration from the record.

J. T. Ranspot, Gibbs & Gibbs, and Stevenson & Ritchie, for appellant.

Howard Martin, Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of seven years.

Appellant sought a continuance for want of the testimony of one J. T. Ranspot, alleging: That he was one of the attorneys in the case, and under contract to be present at the trial, and, relying on which contract, defendant did not cause process to be issued for him. "That defendant is informed and believes that said witness is now at home, sick with the mumps, and not physically able to attend the court. Defendant expects to prove by said witness that one of the defenses in this case will be that deceased was advancing on him at the time of the fatal shots, coming through a barbed wire fence and throwing rocks at defendant at the time the fatal shots were fired. That said witness Ranspot will testify that two or three days after the homicide he (witness) viewed the ground where the same occurred, saw a rock about four pounds in weight lying on the edge of a pool of blood where deceased is charged to have fallen at the first shot; that he saw said rock placed in a cavity exactly fitting in the ground, about twenty feet from the pool of blood, and the direction from which deceased is alleged to have been advancing at the time of the shooting. Witness will also testify that he found a bit of red cloth corresponding to the handkerchief around deceased's neck, which was clinging to the fence where defendant claims deceased came through in advancing on him. That said witness will also testify that he saw said rock in the pool of blood, which he afterwards saw fitted in said cavity, in the ground, on the day of the homicide, on the occasion of the inquest." The substance of the testimony discloses that appellant killed his brother about 10 o'clock, and that after killing him he hitched up his wagon and hauled posts to a certain place on the farm, where the fence needed repairing, and also went to the village of Santo, about two miles from the scene of the killing, and hauled a load of posts to the farm, passing in each instance near the prostrate body of his brother; that about 2 or 3 o'clock in the evening, after finishing the work detailed, he took out one of the horses, went to Santo, and surrendered, stating to the parties that he killed deceased in self-defense. This statement he subsequently repeated at the inquest trial, and testified on this trial that deceased was advancing on him and throwing and hitting him with rocks at the time he fired the fatal shots. Two witnesses testify that they saw the absent witness, Ranspot, pick up the piece of handkerchief, not on the fence, but near the fence. The defense established by two witnesses—one of the attorneys and a physician living at Santo—that they saw the rock described by the absent witness, and that said rock fitted into a hole in the ground about twenty feet from where it was found. The facts testified to by said witnesses were not controverted by the State, but, on the contrary, all the witnesses who mentioned the matter state that the rock was there, so it is not a material matter in this case. If it is material, the same is not controverted. Hence it was not error for the court to refuse to continue this case for want of the testimony of said Ranspot, even conceding diligence.

Bill number 2 complains that the State offered Reuben Bearden as

an expert witness, who testified on direct and cross-examination as to his qualifications as an expert in the use of shotguns as follows: "I am 51 years old, and an uncle of defendant. I helped wash and dress the body of deceased, Lovie Bearden, on the day he was killed. I examined his body for wounds. I found scattering shot marks on his left hand, and also on his face, and one or two shot marks in his left eye. The shot marks on his face ranged from the temple down to the chin. Those in his hand ranged from the wrist out, and numbered eight or ten. I found, also, a shot hole in the head, just above and behind the left ear, about as big as the end of a man's three fingers. Can't say whether the hole had smooth or rough edges, or from what direction the shot which made this hole came. The hair around this hole appeared to be singed, and his face was covered with blood. I have had experience in the use of a shotgun. I have owned shotguns, and my father had one. Have loaded and fired shotguns a great deal. The deceased, Lovie Bearden, was killed with a double-barreled muzzle loader, which was loaded with squirrel shot. It has been twelve years since I used a muzzle loader. My father had a gun which I used some prior to the year 1870. I bought a muzzle loader myself in 1879, and kept it for five years, and sold it and bought a breech loader. Have had a good deal of experience in the use of a shotgun, but never made hunting a business. Before coming to Palo Pinto County I lived in Young County. While I lived up there I was a farmer and stone worker. I hunted at odd times. I never practiced at targets with squirrel shot. Never shot anything but squirrels with them. I have often shot at trees with shotguns, in order to get the range of the gun, and at different distances. Have never shot at trees five, ten, fifteen or twenty paces. I have owned two shotguns myself. Have hunted with borrowed guns some. Have never practiced at targets, boards or anything of the kind, to see how shot would scatter." Appellant objected to said testimony on the ground that witness had not shown himself to be an expert in the use of muzzle-loading shotguns, which was overruled by the court. Thereupon witness testified as follows: "From what I know about shotguns, and the way shotguns scatter, I would say that the shot which struck deceased in the face was fired from a distance of about twenty steps. And from the size of the hole in the side of his head, I would say that the shot which made that hole was fired from a distance of about ten inches. At a distance of eighty yards a charge of shot from an ordinary shotgun will scatter over a surface of about two feet; and at a distance of twenty-five or thirty yeards, some eight, ten or twelve inches." The court did not err in holding witness had qualified himself in the use of firearms, nor was any error committed in admitting said testimony. Head v. State 40 Texas Crim. Rep., 265; Morton v. State (Texas Crim. App.), 71 S. W. Rep., 281.

Bill number 3 complains that the court erred in permitting the State's attorney to ask appellant, while on the stand, if he had been formerly indicted in Palo Pinto County for theft of cattle, to which witness re-

plied in the affirmative. Appellant objects because immaterial, irrelevant, improper and calculated to prejudice the jury against defendant, and further because, defendant being on trial for murder, his character for peace or violence only was in issue, and not for theft, and the trait of character involved in said prosecution for theft will throw no light upon this case or upon defendant's credibility as a witness. We have repeatedly held that when defendant takes the stand he is subject to the same rules on cross-examination as other witnesses, and any question can be asked which goes to discredit his testimony. If defendant had been indicted and convicted of theft, this is a circumstance to be considered by the jury in passing on his credibility, which was one of the issues in this case. Without discussing the matter further, we refer to the cases of Carroll v. State, 32 Texas Crim. Rep., 434; Lights v. State, 21 Texas Crim. App., 308; Woodson v. State, 24 Texas Crim. App., 162; Payne v. State, 40 Texas Crim. Rep., 290; Ware v. State, 36 Texas Crim. Rep., 597.

The fourth bill complains that, while the State's witness, Jim Watson, was on the stand, the district attorney asked said witness if he did not know the general reputation of deceased, Lovie Bearden, in the community in which he lived prior to his death, and that it was good, to which witness answered that it was good, whereupon on cross-examination appellant's counsel asked witness if he had not heard of deceased being in a great many quarrels and fights, and especially with Jim Lanham and old man Lanham, and whether he (witness) did not know deceased was prosecuted for assault on Jim Lanham and for using abusive language to old man Lanham. The State objected to this testimony. The court approves the bill, with the following qualification: "Witness was permitted to testify and did testify that he had heard of deceased's troubles with the Lanhams, but was not permitted to testify that deceased was prosecuted therefor." In this there was no error. Darter v. State, 39 Texas Crim. Rep., 44.

The fifth ground of the motion for new trial complains that the court erred in its charge on manslaughter, wherein the jury are instructed that an assault and battery is adequate cause, in that he failed to define an assault and battery. We do not think this was necessary. The statute makes an assault and battery adequate cause to reduce a homicide from murder to manslaughter, and it is sufficient for the court to give the statute, and under these conditions it is not necessary to define assault and battery. In this connection, however, we recall the argument of appellant's counsel, insisting that in assaults with intent to rape and murder it is necessary for the court to define an assault, and we have so held. This is true. But in such cases assault is an element of the offense on trial, and hence it becomes necessary to define the same to the jury. In the statute under consideration, an assault and battery being adequate cause to reduce murder to manslaughter, the bare statement of the fact carries with it an intelligent conception

of the proposition announced, without a definition of assault and battery. There was no error in the court's charge.

Appellant also contends that the court erred in that part of the charge in which the attention of the jury is directed to the acts of deceased shown to have occurred long prior to the date of the killing—that of battering defendant's tub, whipping defendant's child, tearing down defendant's fence, threatening to shoot a hole through defendant, etc. —insisting that it was on the weight of the evidence, because the undisputed facts disclose that said acts and words were looked upon lightly by defendant, did not disturb him in the least, and were not treated seriously by the defendant, and were not relied on by defendant in the trial as constituting adequate cause, and could not, in legal contemplation of the statute, constitute adequate cause. The charge presenting this matter is quite lengthy, but suffice it to say that the court charges these things as being adequate cause to reduce the homicide from murder to manslaughter; and even if there be error in the charge, as appellant insists, or that same is upon the weight of evidence, it is in favor of appellant, and he can not be heard to complain of said charge.

The court charged the jury as follows: "If you believe from the evidence that defendant had the premises rented, on which the homicide occurred, and that deceased went into the inclosure on said premises without the consent of defendant, and after defendant had requested him not to come into said inclosure, and that he (deceased) continued to go into said inclosure and onto said premises after defendant had remonstrated with deceased against coming into said field and inclosure, and if you further believe from the evidence that such verbal remonstrances, if any, were of no avail, and that deceased on the occasion of the homicide went into said inclosure, and was approaching defendant in said inclosure, and from the acts of deceased, or from his words coupled with his acts, it reasonably appeared to defendant that his life was in danger or that he was in danger of serious bodily injury at the hands of deceased, and that while such danger, if any, was imminent and pending, defendant shot and killed deceased, then you will acquit defendant. And again: "So, also, if deceased was in the act of forcibly ejecting defendant from the premises, and defendant, to avoid being driven off of said premises by force, shot and killed deceased, he was justifiable in so doing, provided he resorted to all other means to prevent being driven from said premises before killing, except that he was not bound to retreat in any event." Both of these charges are the law applicable to the facts of this case.

Appellant insists that the court erred in refusing his requested charge number 2, which is as follows: "If you believe from the evidence that defendant, Sing Bearden, was suffering from bodily pain and mental anguish, caused by wounds and bruises on his body produced by deceased, by means of rocks or missiles of any kind, such as would reasonably incapacitate defendant for any reflection whatever at the instant of

his firing the second shot, if any such shot was fired, or if you have a reasonable doubt as to defendant's capacity for such reflection, caused by the acts and conduct of deceased as above stated, you will find defendant not guilty, even though you should find and believe from the evidence that deceased, Lovie Bearden, desisted from further attack upon defendant at the firing of the first shot, if any such shot was fired." The court properly told the jury if he fired the shot in a sudden transport of passion, aroused by an adequate cause, he would be guilty of manslaughter. The charge in this respect is as full as appellant could expect.

Appellant strenuously insists that the court erred in refusing the following charge: "If you believe from the evidence that defendant, J. S. Bearden, believed, and had good reason to believe his life was in danger, or that he was in danger of serious bodily injury, at the hands of deceased, Lovie Bearden, and that the danger was imminent and pending, and that, in order to defend himself against such danger, he resolved to fire both shots, before firing either, and did, after the firing of the first shot, if such shot was fired, and before reflection or opportunity for reflection by him (defendant), fire the second shot, if such shot was fired, then and in that event the firing of both shots would constitute one act, in which event the killing would be justifiable homicide, and you will acquit defendant." There was no error in the refusal of the court to give this charge.

The charge of the court on self-defense is in strict accord with the decisions of this court, and presents every possible phase of self-defense made by the evidence. It is immaterial whether appellant resolved to fire both shots, or one shot; his intent must be judged from the shot or shots fired; and the court properly applied the law to this state of facts. Appellant may be innocent in the firing of the first shot, and guilty of murder in the firing of the second shot, or, under some circumstances, he might be guilty of murder in the first shot and manslaughter in the second shot. In other words, his guilt depends, not upon the number of shots, but his criminal intent and motive at the time of the shooting. The fact that he resolved to shoot has nothing to do with the question. The question is, what was his intent at the time he shot?

Appellant insists that the verdict of the jury, and charge of the court thereunder, are contrary to the law and not supported by the evidence, because the evidence shows that defendant acted in self-defense. We do not agree with this, but are of opinion that the record before us shows a cruel, dastardly, and almost fiendish murder by appellant of his brother, whose lifeless body he permitted to lie upon the ground while he worked around it, for two or three hours after killing him. It is true, he insists that he did the killing in self-defense, but we do not think the record supports his testimony.

Appellant also insists that the court should have granted him a new trial because one Joe French, a deputy sheriff, who was a material witness against defendant on the trial and took considerable interest in the

prosecution, after the judge of the court instructed the sheriff not to allow said French to be in charge of the jury or to communicate with them, in violation of such instructions, did communicate with and have a private conversation with W. C. Bray, one of the jurors who tried this case, which conversation was had away from and out of the hearing of the balance of said jury, and the sheriff not in charge of him. Defendant says that, while he can not state the nature of said conversation between French and the juror, he charges, on account of the feeling of French against him in this case, the same was prejudicial to his interest. While it is improper for deputy sheriffs to converse with jurors under such circumstances, this record does not show that appellant was injured in any way by the conversation, and we can not indulge presumptions.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

Henderson, Judge, absent. .