BRYAN MONDAY v. THE STATE.

No. 6067.   Decided June 24, 1921.

1.—Murder—Principals—Charge of Court—Requested Charge.

Where, upon trial of murder, the court correctly charged upon the law of principals, and correctly refused the requested charges, to the effect that if one who knowingly engages with others in an unlawful enterprise having for its object the death or serious bodily injury of another he must have intended that his own hand, should strike the fatal blow, there was no reversible error.

2.—Same—Rule Stated—Principals.

The law does not require of principals an actual participation in the act resulting in the death of the party injured, but if defendant advises or agrees to the commission of the offense, and is present when the same is committed, whether he aids or not in the illegal act, he is a principal in the offense, and there was no error in refusing defendant's incorrect requested charges on the law of principals.

3.—Same—Manslaughter—Charge of Court.

Where defendant excepted to the court's charge on manslaughter as being too restrictive, and as stating that if his companions provoked the difficulty defendant's offense would not be manslaughter, but the charge of the court could not be so construed, there was no reversible error on that ground.

4.—Same—Assault and Battery—Adequate Cause.

Where the court stated to the jury that an assault and battery which caused pain or bloodshed would be adequate cause, there was no error in the court's failure to define assault and battery.   Following Bearden v. State, 44 Texas Crim. Rep., 583.

5.—Same—Adequate Cause—Statutory Cause—Other Adequate Cause.

Where, upon trial of murder, the court's charge was limited to an assault and battery by the deceased, and the facts in evidence raised the issue of other occurrences from which sudden passion might be inferred beside the one blow struck by deceased at one of his assailants, a general charge on manslaughter, including all the facts and circumstances, should have been given.

6.—Same—Provoking the Difficulty—Charge of Court.

Where, upon trial of murder, the evidence showed that defendants, with others, used abusive and insulting language toward deceased, who thereupon made an assault and was killed by defendant and his companions, the court properly submitted a charge on provoking the difficulty.

7.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, the evidence showed that the facts and circumstances proven were in such close relation to the main fact as to who fired the fatal shot, as to make them equivalent to direct testimony, there was no error in the court's failure to charge on circumstantial evidence.   Following Bass v. State, 59 Texas Crim. Rep., 191, and other cases.

8.—Same—Argument of Counsel—Practice on Appeal.

Where State's counsel's remarks were in response to the argument of defendant's counsel, and no written charge was asked withdrawing same, there was no reversible error.

9.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Erath. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of murder, penalty, seven years' imprisonment in the penitentiary.

The opinion states the case.

*J. A. Johnson,* for appellant.—On question of principals: Guffey v. State, 8 Texas Crim. App., 187; Red v. State, 47 S. W. Rep., 1003.

On question of manslaughter: Hawthorne v. State, 12 S. W. Rep., 603; Gant v. State, 116 id., 801; Lee v. State, 113 id., 301; Wheeler v. State, 111 id., 1022.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Erath County of the murder of one Newman Bostic, and his punishment fixed at seven years' confinement in the penitentiary.

The homicide occurred on the night of Sunday, May 16, 1920, in the little village of Lingleville. The deceased was cut and stabbed a number of times, and shot through the heart. Four parties were arrested, Bill and Frank Pinkerton, appellant and Roy Crow. The first three were jointly indicted, and upon trial a severance was granted and appellant first tried. When the State closed its case appellant also rested, and introduced no affirmative evidence in his own behalf. Two witnesses testified to threats. The witness Favors swore that on the Sunday before the killing he heard a conversation between the two Pinkertons and appellant, and possibly some others, and they were talking, and Bill said they were going to get some of the dirty s—ns of b—hes that had been trying to run their business, and named several parties, among whom was deceased. That Frank spoke up and said, "We are with you," and that appellant said something sanctioning what they had said. Witness was only present a few minutes and stated he could not remember anything else they said, except what is above detailed, in substance, that they were going to get the named five s—ns of b—hes and "learn them how they could not run their business." Witness Stokes testified that about 6 o'clock on the evening of the day of the homicide he saw appellant, the Pinkerton boys and Roy Crow, and as he walked up to them, one of them whom he took to be Frank Pinkerton said that they would have to get two of

them then.  The four young men mentioned seem to have been together most of the afternoon of the fatal Sunday, and a smaller boy named Brown, about sixteen years old, was with them part of the time.  Brown had a difficulty with a boy about his age named Brandon in which he called Brandon a vile name.  Not a great while before the fatal difficulty these two boys met at a restaurant where deceased was employed and renewed their quarrel, and according to some of the witnesses Brown went and called Red Pinkerton, and that Red came to the restaurant accompanied by appellant and Bill Pinkerton.  The trouble between Brown and Brandon then started again.  Several witnesses testified, and, as is usual, no two described what occurred exactly alike.  From what appears to be most supported by the testimony, we conclude that when Brown and Brandon again began their quarrel, Brandon got Brown down, and Frank Pinkerton, commonly called Red, pulled him off and told him to fight fair, and the two smaller boys went to fighting again, and Brandon again got Brown down.  It cuts little figure whether Brandon and Brown got down on the ground once or twice, but there is a substantial agreement among the witnesses that Brandon had Brown down, and the latter called to Red Pinkerton to "pull the s—n of a b—h off," and that Red caught hold of the hand or arm of Brandon, but was stopped by deceased, who was standing in the door of the restaurant, and whose statement to Red is variously related by the witnesses, the substance of same being that Brown had commenced the fight and Pinkerton was to let the two alone and let Brown get what was coming to him.  Pinkerton thereupon let the small boys alone and addressed himself to deceased.  Archie Lucas testified that deceased told Red twice to let them alone, if he wanted anything to get on a man; and that Red said to deceased, "Shoot you damn s—n of a b—h, you are faded," and that appellant at once spoke up and said, "Four of us here, all loaded and raring to ball the jack."  That Bill Pinkerton stepped on the porch right in front of deceased and said something to him, and that deceased struck him.  Appellant was a step or two from Bill and deceased at this time.  When deceased hit Bill, he turned and hit Red, and the whole party then went off the porch, Bill in front, deceased next, and Red and appellant just behind deceased.  That he saw Red hit deceased twice with the side of his hand, and heard some of the party holler "shoot;" that a gun fired.  That just after Red hit deceased the first time he heard deceased gasp.  That he saw appellant strike at deceased from behind with the side of his hand.  That after the shot was fired deceased holloed, "Boys he shot me."  Deceased was carried into the house and died in a few moments.  He had on a shirt and a pair of pants, and no weapon was found on him or around his body.  This witness also stated that he saw in Bill Pinkerton's pocket that afternoon what he took to be the print of a 25-Automatic pistol.  The fight between the parties began on the porch of a restaurant in which deceased was employed, and which porch was lighted by a lamp from the inside, but during the struggle the parties backed

off the porch. This witness also stated that deceased and Red Pinkerton were talking when appellant put in and made the remark attributed to him.

Otis Moss swore that when the talk between Red and deceased began, Red said it wasn't any of deceased's business to be interfering but if he wanted anything to come out, and that appellant stepped up to deceased and said, "Come on G—d d—n you, there is four of us loaded for you and raring to go," and that deceased "went into the bunch," and they went off the porch together, and just then the gun fired. This witness did not know who hit first, but said that the other men all got around deceased.

Witness Haggard testified that deceased said to Red to "Take his hand off of him, (meaning the Brandon boy) that Brown was not whipped as long as he was cursing," and that Red said, "You s—n of a b—h, what is it to you?" and deceased told him he heard what he said and he meant it," and that Red said to deceased, "G—d d—n you, if you want anything we'll give it to you." That deceased hit Bill, and Red struck deceased, and appellant was right there when they backed off the porch and the gun fired, but this witness said he did not see appellant do anything after the fighting began.

The witness Grissom testified he heard deceased telling Red not to pull him (meaning Brandon) off, and that Red called deceased a s—n of a b—h and that deceased hit him, and he saw Bill Pinkerton step up on the porch and get out a 25-Automatic, and appellant was right behind Bill.

The witness Willard Brown, (not the one with whom Brandon had his fight), said that when deceased told Red to let the boys alone, that Red replied, "G—d d—n you, if you want anything there are four of us and we are raring to go," and that Bill said, "There are four of us, and we are raring to go," and that appellant was standing right there, and he said, "Hell yes, there is four of us and we are loaded for you and raring to jazz." That deceased jumped on Bill, and Red jumped on deceased, and all backed off the porch, and the shooting began. After the shooting the Pinkertons and appellant ran away together. These are substantially the facts. There appear no bills of exception taken to the admission or rejection of evidence.

Appellant excepted to the court's charge on principals, as stated in his brief, because the definition of that term was not correct, and said charge did not tell the jury what in law would constitute principals. The definition in the charge is as follows: "One who is present at the time and place an offense is actually committed, and knowing the unlawful intent and purpose of the party actually committing the offense, either participates in the commission of same, or encourages the party committing the same knowing his unlawful purpose and intent, by words, signs, deeds, or acts, is a principal in the commission of the offense, and under the law, is alike guilty with the one or ones committing the offense." While not in the exact language of

Article 75 of our Penal Code, we think said charge states sufficiently the principle embraced in said article, and that nothing is injuriously inserted or omitted. In this connection appellant asked a special charge to the effect that he could not be convicted unless the jury believed beyond a reasonable doubt that the defendant himself intended to take the life of deceased, or inflict upon him serious bodily injury. This was correctly refused. One who knowingly engages in common with others in an unlawful enterprise having for its object the death or serious bodily injury of another, is guilty of such crime whether it is intended that his own hand or that of another should strike the fatal blow. ·

Appellant excepted to the following part of the charge:

"If, therefore, you believe from the evidence in this case beyond a reasonable doubt that in the County of Erath and State of Texas, and on or about the 16th day of May, 1920, the defendant unlawfully and with malice aforethought shot and killed Newman Bostic, or if you believe from the evidence, beyond a reasonable doubt, that at the time and place alleged in the indictment that either Frank or Bill Pinkerton, unlawfully and with malice aforethought shot and killed the deceased with a gun and pistol and that the defendant was present at the time of the homicide and participated therein with said Pinkertons, or knowing the unlawful intention of the said Frank and Bill Pinkerton and of each or either to shoot and kill the said Newman Bostic, encouraged them by words or acts in the commission of said offense and was a principal with them in the commission of the offense, then in either event you will find the defendant guilty," etc. upon the ground that there was no evidence showing actual participation of appellant in any cutting or shooting, and that the statement of the grounds upon which appellant might be convicted as a principal, were not correctly or sufficiently stated. Our law does not require of principals an actual participation in the act resulting in death; in fact Article 78, Vernon's P. C. makes one guilty as a principal who advises ·or agrees to the commission of an offense, and is present when same is committed, whether he aids or not in the illegal act. So likewise does Article 75. of said Penal Code make one guilty when the actual offense is committed by another, but the accused, being present knowing the unlawful intent, merely encourages by words or gestures those actually committing the act contemplated. We think this complaint of appellant not well founded. In this connection appellant asked a special charge in which he seeks an instruction to the effect that he would not be guilty of murder even though present and participating in the offense, unless he knew when he went to the restaurant where the killing took place, that the Pinkertons intended to unlawfully take the life of deceased, or inflict upon him serious injury. This charge was not applicable. There is evidence that appellant, both by word and deed, participated with the Pinkertons after they reached the restaurant and the difficulty began, and it is well settled that no matter at what stage in a conspiracy the accused enters the same, if he acts

with others, knowing their unlawful design, he becomes equally guilty with them. There was no evidence to show that at any time or place apart from appellant, the Pinkertons conceived the purpose of harm to deceased. All the parties were together and agreeing, a week before the homicide, that they were going to get deceased. When Red Pinkerton challenged attack by deceased a moment before the killing took place, appellant joined in and added his statement that there were four of them "loaded for deceased and raring to go." We believe this special charge was correctly refused, as was special charge No. 3 embodying substantially the same proposition.

Appellant excepted to the court's charge on manslaughter as being too restrictive, and as stating that if the Pinkertons provoked the difficulty, appellant's offense would not be manslaughter. We do not so construe the charge. It contains the following: "Though a homicide may take place under circumstances showing no deliberation, yet if the person guilty thereof provoked a contest with the deceased with the intent of killing or doing him serious bodily injury, the offense does not come within the definition of manslaughter," which appears to be the identical language of Article 1138 of our Penal Code. In applying the law of manslaughter to the facts, the court told the jury that if the defendant, acting with the Pinkertons, in sudden passion arising from an adequate cause, such as an assault and battery by deceased upon Bill or Frank Pinkerton, killed deceased, and that none of these three had provoked a difficulty with deceased with the intention of killing him or doing him serious bodily injury, they should find him guilty only of manslaughter; and also further in said charge the jury were instructed that even though the difficulty with deceased was caused by provocation given by appellant, if there was reasonable doubt as to whether at the time same was given appellant intended to kill the deceased, the jury should find him guilty of no higher offense than manslaughter; and also the jury were told that even though they believed beyond a reasonable doubt that the Pinkertons provoked the contest intending to kill, or inflict serious bodily injury upon deceased, and that appellant was present, they should acquit unless it was shown beyond reasonable doubt that he participated in provoking the difficulty. We do not think the special charge asked should have been given, nor, in view of the matters referred to in the main charge, that it was open to the criticism above discussed.

Appellant excepted to the charge because it did not define assault and battery. The court stated to the jury that an assault and battery which caused pain or bloodshed would be adequate cause. The failure to define assault and battery in this case is not reversible error. Bearden v. State, 44 Texas Crim. Rep., 583.

Appellant also insists that the charge was too restrictive as it limited the jury's consideration of what might be deemed adequate cause, to the one matter of assault and battery by deceased. The law

applicable depends in every case upon the facts in evidence, which facts in the instant case are marked by a number of other occurrences from which sudden passion might be inferred, beside the one blow struck by the deceased at one of the Pinkertons after they had used to him the language relied upon by the State as provocative. Prior acts and words of deceased appear, reference to which might aid a presumption of sudden passion, and in such state of the case a need arises for a charge extending the consideration of the jury to other facts and circumstances. In doubtful cases it is the rule to give to the accused the benefit of such doubt. A general charge on manslaughter, including all the facts and circumstances, should have been given.

There was also an exception to the submission of the issue of provoking the difficulty, it being urged that the evidence did not raise the question. Authorities are numerous to the effect that when the appellant, alone or with others, uses abusive or insulting language to deceased, who thereupon makes an assault and is killed, it is proper to submit to the jury the issue of provoking the difficulty. Branch's Ann. P. C., Secs. 1952-1954. That the language used to deceased by appellant and the Pinkertons, as quoted above, caused deceased to assault one of the Pinkertons, whereupon he was at once cut and shot by them, seems not subject to dispute; and in considering what offense, if any, was committed by appellant and his companions, their intent in the use of such language was a matter for the jury, and should have been submitted in the form which is ordinarily spoken of as provoking the difficulty.

We do not think any error was committed by the court in failing to charge on circumstantial evidence. The proof was direct and positive that the three, appellant and the two Pinkertons, addressed provocative statements to deceased just prior to the homicide, and that he struck one of the Pinkertons, whereupon they all closed in upon him. One witness says appellant was striking deceased with the side of his hand, and that Red Pinkerton was also striking him with the side of his hand. Deceased was dangerously cut in several places. A witness testified that at the moment of the beginning of the fight he saw Bill Pinkerton with a 25-Automatic pistol in his hand. But one shot was fired. An empty freshly exploded shell was picked up where the fight took place after it was over. No one was engaged in the affair but appellant, the two Pinkertons and deceased. It was shown that an automatic pistol ejects its shells. We think this case clearly within that long line of decisions holding that if the case be not one of direct evidence, the facts proven were in such close relation to the main fact, that is, who fired the fatal shot, as to make them equivalent to direct testimony and to render a charge on circumstantial evidence unnecessary. Bass v. State, 59 Texas Crim. Rep.. 191; Cabrera v. State, 56 Texas Crim. Rep., 141, 118 S. W. Rep., 1057; Crews v. State, 34 Texas Crim. Rep., 543; Page 445, Vernon's C. C. P., p. 445, and collated authorities.

An exception was taken to a remark made by the State's attorney to the effect that a jury of Erath County had assessed the death penalty against a man who had conspired to kill another. The court qualifies the bill of exceptions taken to this statement by saying the statement was in reply to the argument of appellant's counsel that because appellant did not fire a single shot he could not be guilty of murder. Appellant was given only a penalty of seven years. No written charge was asked instructing the jury not to consider said remark, and, under the circumstances, while we think same exceeded the limits of proper argument, we do not think it such error as to call for a reversal of the judgment.

We cannot agree that the evidence does not support the verdict. In addition to participating in threats directed towards deceased, appellant was clearly acting with the Pinkertons in bringing on the fight, and in actual participation with them therein, and cannot escape, the consequences falling upon one who is a principal with the man who fired the actual shot.

For the error in refusing to give a general charge on manslaughter, and in restricting the cause adequate to the one of an assault and battery, the judgment will be reversed.

*Reversed and remanded.*