CLAYTON COOMER V. THE STATE.

No. 8099. Decided April 2, 1924.

Rehearing denied June 18, 1924.

**1.—Murder—Bill of Exceptions—Practice on Appeal.**

Where no extension of time had been granted for filing the bills of exception, it was not thereafter within the power of the trial judge in vacation to make an additional extension, and the same cannot, therefore, be considered on appeal. Following: Roberts v. State, 62 Texas Crim. Rep., 7, and other cases.

**2.—Same—Charge of Court—Principals—Actual Presence of Defendant.**

Where the court in his charge on principals, in addition to the paragraph quoting the statutes on this subject, in applying the law to the facts, instructed the jury that if the appellant had agreed that he and his companion would resist by force of arms any effort to arrest them, and had provided themselves with arms for the purpose of killing anyone who made an attempt to arrest them, and that the deceased was killed by one of appellant's confederates while he was attempting to make the arrest, the appellant would be a principal, there is no reversible error, and the claim that he was under arrest and was not present within the meaning of the statute is untenable under the facts of the instant case. Following: Middleton v. State, 86 Texas Crim. Rep., 307, and other cases.

**3.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the appellant by the charge of the court was accorded the benefit of all the mitigating and exculpatory evidence, the complaint that among these matters of mitigation the charge on manslaughter was not embraced is deemed without merit; besides, the facts did not present the issue of manslaughter.

4.—Same—Arrest—Practice in Trial Court—Warrant.

In the instant case there is no basis for the contention that the arrest was not authorized, as the offense was committed in the presence of the officers and a warrant was not necessary.

5.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the conviction was sustained by proper evidence under a full and fair charge of the court, there is no reversible error.

6.—Same—Rehearing—Charge of Court—Self-Defense—Manslaughter.

We agree with counsel for appellant that it is in rare instances, only, where a charge upon manslaughter may properly be omitted, if a charge on self-defense is called for, but from a re-examination of the facts in evidence, this court is of opinion that the instant case furnishes one of the exceptions, and the motion for rehearing is overruled.

Appeal from the Criminal District Court of Dallas.    Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Basket & DeLee,* for appellant.—On question of requested charge on manslaughter: Red v. State, 39 Texas Crim. Rep., 667; Leslie v. State, 42 id., 65; Cordes v. State, 54 id., 204; Condron v. State, 138 S. W. Rep., 594.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney and *Shelby S. Cox,* District Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of ten years.

While Henry Belcher, Pete Welk and the appellant were engaged in the manufacture of liquor, five officers approached for the purpose of making arrest. Tom Wood, one of the officers was shot and killed. The prosecution is for the murder of Wood.

From the confession of the appellant and from the testimony of the officers who raided the still, it was shown that the appellant and his confederates, Welk and Belcher, were engaged in the manufacture of whisky at a secluded place; that they were armed, appellant furnishing two shotguns and certain ammunition; that they had determined not to suffer themselves arrested but to resist by force of arms. The officers surrounded the stills and secreted themselves for about three quarters of an hour listening to the conversations of the appellant and his two companions and observing their actions. One of them fired his pistol, and another remarked, "You scared me." Another said, "Yes, that is what would happen if some one came."

The other said, "No, I have a full box of cartridges and I will use them." A five-gallon jug was then filled with whisky and appellant started down a path to hide it. He was intercepted by officer Brite, who demanded that appellant hold up his hands. Appellant dropped his jug and uttered an exclamation. According to the confession, he hollered, "Look out." According to the officer, he said "Whoo." Immediately, appellant's companions seized their guns and left the still together. After going a few steps, they were intercepted by officers Love and Wood and were directed to put up their hands. They each immediately fired in the direction of the officers and then fled in different directions. Other shots followed by both the officers and the fugitives. Wood was shot in the head and killed. The circumstances were sufficient to support the finding of the jury that the shot that killed him was fired either by Welke or Belcher.

There are several bills of exception in the record which appear to have been filed on the 28th day of May. The term of court exceeded eight weeks. The motion for new trial was overruled on the 16th day of March. The law allowed thirty days after that date within which to prepare and file the bills of exception. Code of Crim. Proc., Art. 845. The statute also permitted an extension of the time by order of the court or the judge. An extension of sixty days was entered on the 17th of March, which expired upon the 18th day of May. No new extension of time had been granted up to that time, and thereafter it was not within the power of the judge in vacation to make an additional extension. Roberts v. State, 62 Texas Crim. Rep., 7; Griffin v. State, 59 Texas Crim. Rep., 426; Hart v. State, 86 Texas Crim. Rep., 655; Fuston v. State, 94 Texas Crim. Rep., 467, 251 S. W. Rep., 1076; Harr v. State, (No. 7199) not yet reported.

The facts relating to the appellant's connection with the offense are not in controversy. Welk, Belcher and the appellant were members of a conspiracy, the purpose of which was to commit the felony of the unlawful manufacture of whisky, and while engaged in the commission of that offense, the deceased and others appeared upon the scene for the purpose of arresting the offenders. The conspirators had arms ready for use and the appellant had furnished two shotguns and ammunition. When he encountered the officers, he gave the exclamation of either, "Look out" or, "Whoo," which was heard by his confederates and they, acting upon it, seized their weapons and dashed away from the still, where there was a firelight, and into the darkness, where they at once entered into a fight with the officers who attempted to arrest them, and the death of the deceased resulted. The court instructed the jury thus:

"Our statute provides that any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act."

Objection was urged to this charge as being inapplicable for the reason that while appellant was actually present, he was under arrest and thereby incapacitated to have participated in the acts of his confederates or to interpose any obstacle to their committing the offense of murder. The paragraph of the charge quoted is in substance Article 78 of the Penal Code. In addition to that charge, the court in applying the law to the facts, instructed the jury that if the appellant had agreed that he and his companions would resist by force of arms any effort to arrest them, and had provided themselves with arms for the purpose of killing any one who made an attempt to arrest them, and that the deceased was killed by one of the appellant's confederates while he was attempting to make the arrest, the appellant would be a principal. No objection was addressed to this paragraph of the charge. Articles 75 and 76 of the Penal Code in substance embrace among those who may be principals, such as knowing the unlawful intent of the principal actor and aiding by acts or encouraging by words, or keeping watch to prevent his interruption: also those who procure arms or means of any kind to assist in the commission of the offense, or whoever at the time endeavors to secure the safety of the offenders. The appellant having entered into the conspiracy to commit a felony and to kill those who might interfere, became responsible for the acts of his co-conspirators pending the consummation of the common design and in furtherance thereof. Cox v. State, 8 Texas Crim. App., 254; Vernon's Tex. Crim. Stat., Vol. 2, p. 37, and cases cited; Hays v. State, 90 Texas Crim. Rep., 12, and authorities cited; also Cyc. of Law & Proc., Vol. 21, p. 679, subdivision 2. That the appellant was physically present at the scene of the homicide is conceded, but that because of his arrest, he was not present within the meaning of the statute. "Present," it is said by the appellant, requires that he be near enough to render assistance to the main design should need arise, citing Amer. & Eng. Ency. of Law, Vol. 1, p. 258. There it is also said: "Thus constructive presence may be actual absence." Middleton v. State, 86 Texas Crim. Rep., 307; Grimsinger v. State, 44 Texas Crim. Rep.. 20. Whether physically present or distant from the place where the crime is committed, if at the time he does some act assigned to him in furtherance of the common design, he is held a principal under our statute. See authorities in Amer. & Eng. Ency. of Law, Vol. 1, p. 259. For example, one who was forty miles away and gave a signal upon which his confederates acted was a principal. See State v. Tally (Ala.), 15 So. Rep., 722.

In the present case, the evidence shows that appellant not only agreed in advance to the commission of the offense but that he furnished arms to be used in the criminal act, and that it was upon the exclamation, remark or signal given by him that his confederates acted in attempting to prevent the arrest. It is true that at the

immediate time the shot which killed the deceased was fired, appel-
lant was under restraint, though the firing was practically simulta-
neous with his custody. Brite had not taken physical possession of
the appellant before the firing began. Immediately upon the ap-
pellant's observing the presence of Brite, he used an expression which
was acted upon by Welk and Belcher. The conspiracy to resist ar-
rest included all. Upon its success rested the appellant's freedom as
well as that of his companions. It was but chance that directed the
fatal shot to officer Wood rather than to Brite who accosted the ap-
pellant. He having stepped away from the still to deposit some whisky,
had failed to carry his gun, but if his companions, on fleeing from the
still with their guns, had come upon Brite who held the appellant in
custody, they would, in pursuance of the common design, have fired
upon Brite with the same degree of readiness that they did upon Love
and Wood who happened to be the officers with whom they first came
in contact.

A charge favorable to the appellant upon the law of self-defense
of illegal arrest by firing upon the officers upon the mistaken belief
that they were trespassers or robbers, and a charge upon the law of
circumstantial evidence were submitted. We are constrained to re-
gard the charge on principals as not amenable to the objections di-
rected against it. The court assumed that the intent which governed
the actual doers of the homicide would be available to the appellant,
and for that reason embraced in the charge the matters which have
just been mentioned.

Appellant insists that if in shooting Wood, Belcher and Welk were
guilty of manslaughter alone, this would inure to the benefit of the
appellant. This is questioned. At the time appellant gave the ex-
clamation which caused Welk and Belcher to act, he had no doubt
that Brite was an officer. There was in his mind no suspicion that
Brite was a robber. He recognized Brite and called him by his first
name, and had he killed him, under the facts developed, no issue of
self-defense nor manslaughter would have arisen in his own behalf.
In the opinion of this court in the case of Red v. State, 39 Texas
Crim. Rep., 669, it is said:

"The contention of appellant that a principal of the second degree,
or one who, under our statute, did not actually commit the offense
himself, but who was present, and, knowing the unlawful intent, etc.,
aided the person who did commit it, can only be convicted of the
same degree as the actual doer, is not a sound one. If he enters into
the commission of the offense with the same intent and purpose, then
his offense will be of the same degree as the actual doer, but he may
have a different criminal intent from the one who perpetrates or
does the act; and in such case he will be guilty according to the
intent with which he may have performed his part of the act. Guffee
v. State, 8 Texas Crim. App., 187; and authorities cited in White's

Ann. Penal Code, Sec. 92; Rex v. Murphy, 6 Car. & P., 103; 1 Whart. Crim. Law, secs. 214, 220, 479.''

See Rose's Notes on Tex. Rep., Vol. 5, p. 1248; Leslie v. State, 42 Texas Crim. Rep., 65.

In the present case, the appellant, by the charge of the court, was accorded the benefit of all the mitigating and exculpatory evidence which the record presented in favor of the actual doers. The complaint of the appellant that among these matters of mitigation, the charge on manslaughter was not embraced is deemed without merit. As intimated above, it is conceived that even if the issue of manslaughter had been raised in favor of Welk and Belcher, it could not have been incumbent upon the court to apply it in favor of the appellant. However, we are impressed with the view that the facts do not present the issue of manslaughter. There is no suggestion that in firing the fatal shots Welk and Belcher were not in full possession of their mental faculties. The record suggests that they acted with deliberation in accord with the design previously agreed upon by them and the appellant, namely, that if there was an attempt to arrest, they would resist to the death. The only suggestion that they may have been misled into the belief that they were being attacked by robbers seems that inferred from the fact that officers Love and Wood gave the command to, ''Stop and put up their hands.'' At the time this command was given, Welk and Belcher had received and were acting upon the signal or exclamation of the appellant. The more natural inference is that on receiving that signal, they became aware of appellant's arrest and of their own danger of apprehension and that their subsequent acts were in accord with this view rather than in the belief of excitement based upon the impression that they were the subject of an unlawful attack.

It is true that there being other elements concurring, the issue of manslaughter might arise from an unauthorized arrest. Jones v. State, 26 Texas Crim. App., 12. An authorized arrest in a wanton and menacing manner causing reasonable apprehension of death or serious bodily injury might justify a homicide. Hardin v. State, 4 Texas Crim. App., 354; Jones v. State, 25 Texas Crim. App., 12; Burkhardt v. State, 83 Texas Crim. Rep., 228; Bishop's Crim. Law, 9th Ed., Vol. 1, Sec. 868.

In the present case, there is no basis for the contention that the arrest was not authorized. The offense was committed in the presence of the officers, and a warrant was not necessary. Art. 259, C. C. P. According to this statute, a private person would, under the facts, have been authorized to apprehend the appellant and his companions. The court instructed the jury on the law of justifiable homicide on the theory that Welk and Belcher might have believed that they were in danger of death or serious bodily harm.

Our examination of the record and the authorities to which we

have been referred or which have come to our attention does not
lead us to believe that there was no evidence justifying the conviction
of the appellant; nor that there have been pointed out errors in the
charge of the court such as would justify a reversal of the judgment.
An affirmance is therefore ordered.

*Affirmed.*

ON REHEARING.

June 18, 1924.

HAWKINS, JUDGE.—In view of appellant's motion we have con-
sidered the bills of exception. The first complains of receiving in
evidence appellant's confession. To our minds the objections urged
do not appear tenable. All other bills relate to the refusal of charges
upon the issue of self-defense or manslaughter. Upon self-defense
the court gave a charge which was as liberal as the facts justified;
and perhaps more so. We agree with counsel for appellant that it is
in rare instances only where a charge upon manslaughter may prop-
erly be omitted if a charge upon self-defense is called for; but from a
re-examination of the facts in evidence we are of opinion the present
case furnishes one of the exceptions.

Believing our former announcement made a correct disposition of
the case, the motion for rehearing is overruled.

*Overruled.*