BERT SMITH V. THE STATE.

No. 14326.   Delivered November 18, 1931.

The opinion states the case.

*Reynolds & Heare,* of Shamrock, and *B. Y. Cummings,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Appellant was convicted of being an accomplice in the commission of the offense of embezzlement, and his punishment assessed at three years confinement in the penitentiary.

Prior to the time that the indictment was returned in the present case, an indictment had been returned against appellant by the grand jury of Hutchinson county at the October term, 1929, charging in various counts theft, receiving and concealing stolen property, embezzlement, and receiving and concealing embezzled property, all of which offenses were based on the same transaction upon which the offense for which appellant stands convicted was predicated. An acquittal resulted, and thereafter the grand jury of Hutchinson county returned the indictment in the present case. The venue was changed to Potter county. It is upon this indictment that the present conviction is predicated. Two counts of the present indictment were submitted to the jury. One of these counts charged, in substance, that R. A. Franks, who was the agent of the First State Bank of Stinnett, fraudulently embezzled $6,601.80 from said bank, and that one

J. W. Adams acted with him as a principal in the commission of said offense. Said count further charged that prior to the commission of said offense by Adams and Franks, appellant did unlawfully, wilfully and fraudulently prepare and furnish arms and aid to the said Adams for the purpose of assisting him in the commission of said offense, appellant not being present at the commission of the said offense by Adams and Franks. Appellant was acquitted of tthe charge contained in this count. The count upon which the conviction was predicated, after charging Franks and Adams with the offense of embezzlement from the First State Bank of Stinnett, contained an averment that prior to the commission of the offense by Adams and Franks, appellant advised, commanded and encouraged Adams to commit the offense, appellant not being present at the commission of said offense by Adams and Franks. Prior to the indictment in the present case, appellant had not been charged as an accomplice in the commission of the offense.

Appellant contends that there is no testimony in the record sufficient to support the allegation in the indictment that he advised, commanded and encouraged Adams to commit the offense. He takes the further position that the testimony on the part of the state tends to show that he was a principal and not an accomplice in the commission of the offense.

In an effort to prove appellant's connection with the offense, the state relied upon circumstantial evidence. That Franks, who was an employee of the bank, agreed to permit Adams to take the money, and, that pursuant to their agreement, Adams came into the bank and ostensibly forced Franks to deliver the money to him, was undisputed. Appellant and Adams were friends and had frequently been seen together prior to the commission of the offense by Franks and Adams. On the day before the bank's money was taken Adams was in a store in Amarillo looking at a revolver. Appellant came into the store and asked Adams if he wanted the revolver, and Adams replied that he did. Appellant said: "Well, buy it, but you could beat it in Dallas." Adams bought the gun, and the proprietor gave him some cartridges for it. Again, on the day before the offense was committed, appellant introduced Adams to the proprietor of an automobile station as Bill Baker, and told the proprietor that Adams wanted an automobile at five o'clock the next morning. Adams signed the name "Bill Baker" on the receipt for the car. Appellant stated to the proprietor, in effect, that he and Adams were officers. The bank's money was taken at eight o'clock in the morning on November 22, 1929. Adams returned the car to the automobile station at ten o'clock on the morning of November 22, 1929. Appellant was not present at the bank when the money was taken. Adams and Franks were not used by the state as witnesses on appellant's trial. Their written confessions were introduced solely for the purpose of showing their own guilt. The state introduced in evidence appellant's written statement, which, omitting the

formal parts, reads as follows: "J. W. Adams called me on long distance phone at my home at Lelia Lake and requested that I meet him at Panhandle, Texas, and if I did not see him there to come on up the road toward Stinnett and that he would see me on the road. I come on through Panhandle on towards Stinnett and met Adams about two miles south of Stinnett on the highway. He put a sack in my car saying, 'Here is the money I was telling you about that I inherited last summer.' He told me to take care of it, that he would be down in a day or two and put it in the bank. I took the sack of money home with me and put it under the house where the officers found it."

On the night after the commission of the offense, Adams was registered at a hotel under the name of Bill Baker. Appellant and his wife were registered at the same hotel under their correct names, and occupied a room on the same floor as was the room of Adams. Appellant had requested the clerk to call him at five o'clock the next morning. Officers went to Adams' room, arrested him and made a search. They found a bundle of money containing $500 under Adams' mattress. After the arrest of Adams, the officers learned that appellant had called for the key to Adams' room. Following the bellboy, who carried the key to appellant, they found appellant and his wife fully dressed and prepared to leave the hotel. Appellant was arrested. No money was found in his room. Officers went to appellant's home, which was in Lelia Lake, a town some distance away from Stinnett, the scene of the robbery. They were unable to find the bank's money in appellant's house. Finally appellant was carried to his home, he having promised to get the money. On the way appellant told the officers where the money was hidden. He also told them that he did not want to face his family, saying: "I am out of a family of five boys. * * * I am the first one that was ever guilty of anything like this in my life, and I had rather be dead than go back and face my folks." The bank's money was found under appellant's house in the place appellant had described. The foregoing facts were testified to by state's witnesses.

Appellant denied any guilty connection with the money found under his house. He testified that the statement introduced by the state was not voluntary. He said he was at his home at Lelia Lake, and also in the town of Clarendon during the day the bank's money was taken. He said that he did not place the money under his house. He offered testimony tending to show that Adams placed the money under his house during his absence. Appellant admitted that he had been associated with Adams, but denied that he advised him to commit the offense, and said that he had no knowledge that Adams and Franks were going to commit the offense.

In his confession, Adams stated that appellant advised and commanded him to commit the offense. He also stated that after he got the bank's money he drove out two miles on the highway, where he gave the money

to appellant. He said in his confession: "Bert Smith and I had an agreement that he should meet me and take the money and hide it, and that we would 'split' it between us later." This confession, as heretofore stated, was admitted solely to show the guilt of Adams.

In the absence of the testimony of Adams, we are of the opinion that the testimony is insufficient to show that prior to the commission of the offense appellant advised and commanded Adams to commit same. It was incumbent upon the state, in order to meet the demand of the law of circumstantial evidence, to prove circumstances of a conclusive nature "leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty" that appellant advised and commanded Adams to commit the offense. Further, it was necessary that the circumstances "exclude every other reasonable hypothesis" except that of appellant's guilt. Branch's Annotated Penal Code, sec. 1875; Coffman v. State, 73 Texas Crim. Rep., 295, 165 S. W., 942. We quote from Branch's Annotated Penal Code, sec. 1877, as follows: "To sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him. Tollett v. State, 44 Texas, 95; Porter v. State, 1 Texas App., 399; Jones v. State, 4 Texas App., 436; Gill v. State, 36 Texas Crim. Rep., 595, 38 S. W., 190; Clifton v. State, 39 Texas Crim. Rep., 619, 47 S. W., 642."

If it should be decided that the circumstances are sufficient to show a conspiracy between appellant and Adams, it is observed that it was the state's theory, given support in the testimony, that at the very time Adams was receiving the money from Franks, appellant was performing his part in the commission of the crime in driving to the appointed place for the purpose of meeting Adams in order that he (appellant) might receive the money, hide it, and later make a division of the spoils. In other words, at the time the offense was being committed, appellant was doing an act assigned to him in furtherance of the common design. Hence appellant was a principal, and not an accomplice. We quote from Coomer v. State, 97 Texas Crim. Rep., 588, 262 S. W., 495, as follows: "Whether physically present or distant from the place where the crime is committed, if at the time he does some act assigned to him in furtherance of the common design, he is held a principal under our statute. See authorities in Amer. & Eng. Ency. of Law, vol. 1, p. 259. For example, one who was 40 miles away and gave a signal upon which his confederate acted was a principal. See State v. Tally, 102 Ala., 25, 15 South., 722."

In Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046,

1053, after setting forth the statutory ways in which parties may act together and be principal offenders, this court said: "Of these six statutory ways in which parties may act together and be principal offenders, it will be seen that two only require the presence of the co-principal with the one actually doing the criminal act, while four make him a principal though physically absent from the scene of the crime; but no confusion will arise if we keep clearly before us the underlying principle that in every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose. As is well set forth in the Cook Case, 14 Texas App., 96, just here lies the line of cleavage between accomplices and principals; that is, that unless the accused be then actually doing something which associates him with the execution of the unlawful act at the very time it is done, he would not be a principal. It would be immaterial which one of the six methods mentioned he pursues, but he must be doing something in some one of the ways enumerated."

Believing that the evidence fails to support the charge contained in the indictment, it becomes our duty to order a reversal.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.