## BOB BARNETT V. THE STATE.

No. 10406. Delivered February 16, 1927.

**1.—Murder—Principals—Who Are—Rule Stated.**

Appellant in this case was convicted of being a principal to the crime of murder. In the case of Middleton v. State, 86 Tex. Crim. Rep. 307 this court presented the analysis of the law of principals, and there said, "In every case, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense, the parties must be acting together, each doing some part in the execution of the common design."

**2.—Same—Continued.**

Where one is actually absent in person from the scene of the commission of the offense, the state must prove that he was a party to a plot or agreement to commit the crime, and the proof must further show that the accused was doing something, at the very time of the commission of the offense in furtherance of the common purpose. The proof in this case does not meet the measure of this requirement. See Comer v. State, 97 Tex. Crim. Rep. 589.

**3.—Same—Accomplice Testimony—Corroboration—Held Insufficient.**

The conviction in this case rested entirely upon the testimony of an accomplice. The record is devoid of testimony corroborating the accomplice upon both the proposition that appellant agreed to the killing, as well as that he was doing something in furtherance of the design to kill, at the time of the homicide, and in the absence of such corroboration, the cause must be reversed and remanded.

Appeal from the District Court of Young County. Tried below before the Hon. H. R. Wilson, Judge.

Appeal from a conviction of murder, penalty life imprisonment in the penitentiary.

The opinion states the case.

No brief filed for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction of murder; punishment, life imprisonment in the penitentiary.

The sufficiency of the testimony, resting mainly on the question of the lack of corroboration of the accomplice, is challenged. Crabtree, Looney and Furl at about ten o'clock at night came in a car together to a point in a pasture not far from the town of Megargel in Young County, at which point officers had located a quantity of cigarettes taken from a burglarized house in Gra-

ham. The tracks of two cars had been followed from the burglarized store to the point where the cigarettes were found. The tracks of one of these cars correspond with tracks made by appellant's car. Officers watched the cigarettes. During the day following the burglary, a car was seen going along the road past the place where the cigarettes were, and at a point some few hundred yards beyond the car turned around and went back. The watchers were unable to identify the car or the driver but said the tracks made by the car were similar to tracks made by appellant's car. That night shortly after the parties first named approached the place where the cigarettes were, this homicide occurred. Crabtree and Looney got out of the car when they reached the cigarettes, Crabtree having a rifle and Looney a shotgun. Ikard and another officer watching the cigarettes, called out and Crabtree and Looney fired. Ikard was struck by a rifle bullet and killed. Before he fell he shot Crabtree, and his companion shot Looney. Both Looney and Crabtree were killed. Furl, who had remained at the car, fled back to Megargel and went to a hotel kept by one Love. He told Love of the tragedy and wanted to see appellant. Love found appellant and brought him to the hotel. Love testified that he told Furl he had better surrender and that appellant said this was the proper course. Something over two months after the homicide Furl, who had denied having anything to do with it or that appellant had anything to do with it, changed his story and then told, and also testified on this trial that appellant, Crabtree and Looney had come to him during the day before the killing and persuaded him to go out and haul the cigarettes into Megargel. He said they told him they had gotten the cigarettes at Graham and put them in a pasture. He further testified that, after he agreed to go appellant told him, Crabtree and Looney to go out to the place and he would follow them, that he would go through town and see if there was any law following them. He swore that appellant tried to get him to take a gun, and told him to be careful and not let anyone slip up on them. He said Crabtree and Looney had guns, and he identified the guns used in the homicide as those had by the two men. He also testified that appellant told them not to let Sheriff Adams arrest them. Furl testified as to the killing, as to his going back to the Love hotel and sending for appellant, and said that appellant told him not to mention his name, and that he would do anything he could to help him get out of the trouble. He testified further that as he ran away from the scene of the killing he saw a car in the road some one hundred and fifty

yards from the place coming down toward the scene, and that said car went on up past the place of the killing and turned around, also that when he first saw this car it had not gotten to the scene but was coming along the way his car had come; further, that he did not know whose car it was, nor how many people were in it, nor what kind of car it was, and that this was a few minutes after the killing. He had left the scene and was on his way to Megargel when he saw said car. Mr. Davis testified that about a year and a half before the homicide he loaned appellant the rifle which was found under the body of Crabtree after the killing. Love, the hotel man who went after appellant at Furl's request the night of the killing, testified that appellant seemed excited when he found him, but upon cross-examination he said everybody there were more or less excited. Mr. Allred, the County Attorney, testified that appellant told him that Crabtree and Looney had taken his car on the night of the burglary at Graham. Mr. Allred's testimony is a little confusing. In one place he testified that he found out that appellant had been at Four Corners until he came back with some people in his car after the killing, and in another place he says that appellant told him that he could prove where he was at the time of the killing because he had officers who were his witnesses, and said that he sat for an hour or two in the car of the night watchman at Megargel.

We have set this testimony out thus fully because of our conclusion that it is not sufficient to support a conviction of appellant as a principal offender in the crime of murder of Mr. Ikard. In the case of Middleton v. State, 86 Tex. Crim. Rep. 307, we tried to present an analysis of the law of principals and there said:

"In every case the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense, the parties must be acting together, each doing some part in the execution of the common purpose."

As applied to one actually absent in person from the scene of the commission of the offense, this means that the state must prove in some legal manner that the accused was a party to a plot or agreement to commit the crime, and that after he had agreed with those actually committing the offense, or others, that same should be committed, or that some enterprise should be embarked upon whose execution fairly included the commission of such crime; the proof must further show the accused was doing something at the very time of the commission of the

offense which was in furtherance of the common purpose. Coomer v. State, 97 Tex. Crim. Rep. 589.

Of course, under other provisions of our statutes, when the state relies on the testimony of an accomplice to make out its case against the accused as a principal, there must be, in a case such as this one, evidence aside from that of the accomplice which tends to show that the accused had agreed to the commission of the offense, as well as tending to show that he was doing some part in the execution of the common design at the time of the killing. We confess our inability to find in this record such corroboration of the accomplice Furl. What evidence is there aside from that of Furl and that relating to the rifle of Davis which tends to show that appellant plotted or agreed with Furl, Crabtree and Looney to kill Ikard or any other officer? What evidence aside from that of Furl tends to show that when Crabtree shot Ikard this appellant was doing something in furtherance of any plan or agreement to kill Ikard or some other officer?

We have tried above to set out all the salient points of the testimony in this case, and if we leave out the testimony of Furl and consider that of others for the purpose of determining whether there be any corroboration, we have nothing save the fact that appellant's car was apparently used in carrying the goods from the burglarized store to where they were found in the pasture; that said car came up in the road past the place near where the cigarettes were concealed some time during the day; that a car, not shown to be appellant's, or to make tracks like appellant's, came past the place that night after the killing and turned around and went back; that appellant told witnesses that Crabtree and Looney had gotten his car from his house on the night of the alleged burglary, he thinking they wanted it for the purpose of going after some liquor; that appellant said that Looney and Crabtree had gotten his car some time during the day preceding the night of the killing; that appellant had borrowed from another party about a year and a half before the homicide the rifle used by Crabtree in shooting Ikard. None of these facts, save that of the borrowing of the Davis rifle, seem to tend to prove that appellant agreed or plotted with Crabtree, Looney or Furl to kill Ikard or any other officer, and that fact does not support the theory of being a principal offender. None of them present any sort of proof that appellant was doing anything at the time Ikard was killed in furtherance of any plot or plan to kill Ikard or any other officer.

We regret the necessity of reversing cases for lack of evidence,

but must do our duty in the premises as we see it. Believing this record to be devoid of testimony corroborating the accomplice upon both the proposition that appellant agreed to the killing, as well as that he was doing something in furtherance of the design to kill at the time of the homicide, we are impelled to reverse this cause for the lack of testimony.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*