## BOB BARNETT V. THE STATE.

No. 11142.	Delivered November 23, 1927.

Rehearing denied February 1, 1928.

### 1.—Murder—Accomplice Testimony—Not Sufficiently Corroborated.

There is no dispute but that the appellant, charged with murder, was not actually present at the scene of the homicide, but was some mile and a half away. The only evidence introduced incriminating him, was that of the witness Furl, an admitted accomplice. There was no corroboration of this accomplice's testimony, such as the law demands, and the case must be reversed and remanded.

#### ON REHEARING BY STATE.

### 2.—Same—Accomplice—Testimony—Corroboration—Insufficient.

To warrant the conviction of this appellant the corroboration of the accomplice witness must have tended to show that appellant had agreed beforehand to the killing of the deceased, or that he in fact did something in furtherance of a common design to accomplish it, in the absence of which he could not be guilty as a principal. Not by any stretch of the imagination can it be said that there was such corroboration, as is demanded by Art. 718 of our C. C. P., and the state's motion for rehearing must be overruled.

Appeal from the District Court of Young County. Tried below before the Hon. E. G. Thornton, Judge.

Appeal from a conviction of murder, penalty ninety-nine years in the penitentiary.

This is a second appeal of this case, the former appeal being reported in 291 S. W. 540. The former reversal was based on the insufficiency of the evidence. Practically the same questions are presented in the instant record.

*V. L. Shurtleff* of Breckenenridge, for appellant.

*Taylor, Muse* and *Taylor* and *A. A. Dawson,* State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder, the punishment confinement in the penitentiary for 99 years.

This is the second appeal of this case, the former appeal being reported in 291 S. W. 540. The reversal was based on the insuf-

ficiency of the evidence. Practically the same questions are presented by the instant record, and the evidence is largely the same as that shown in the record of the former appeal. The state offered additional testimony in the present trial, which it is contended sufficiently corroborates the accomplice Furl.

In the former opinion Judge Lattimore cited the case of Middleton v. State, 217 S. W. 1046, as presenting an analysis of the law of principals, and quoted therefrom as follows:

"In every case * * * the evidence must show and the charge of the trial court submit that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose."

Appellant was not present at the time of the commission of the homicide, being in the town of Megargel, a distance of about a mile and a half from the scene of said homicide. In support of the theory that appellant was a principal, the state had to rely on the testimony of the witness Furl, who was an accomplice. In the former opinion, Judge Lattimore said:

"Of course * * * when the state relies on the testimony of an accomplice to make out its case against the accused as a principal, there must be, in a case such as this one, evidence aside from that of the accomplice which tends to show that the accused had agreed to the commission of the offense, as well as tending to show that he was doing some part in the execution of the common design at the time of the killing."

As said on the former appeal, it was encumbent on the state to prove "in some legal manner that the accused was a party to a plot or agreement to commit the crime, and that, after he had agreed with those actually committing the offense or others that same should be committed, or that some enterprise should be embarked upon whose execution fairly included the commission of such crime * * * the accused was doing something at the very time of the commission of the offense which was in furtherance of the common purpose." See Commer v. State, 262 S. W. 495.

Having located a quantity of cigarettes near the town of Megargel, which had been stolen from a store in the town of Graham, officers watched the cigarettes for the purpose of apprehending the thieves. Earlier in the day the tracks of two cars were followed from the burglarized store to the point where the cigarettes were discovered. It was shown that the tracks of one of the cars corresponded to the tracks of appellant's car. During the time the officers were watching the cigarettes, a car came within about 150 yards of the point where the cigarettes were

concealed, turned around, and went back. The tracks made by this car corresponded to those made by appellant's car. However, the officers could not identify the driver of the car and were unable to state the kind of car that had approched the point where they were watching. About ten o'clock at night, while the officers were watching the stolen property, Crabtree, Looney, and Furl drove together in a car to the point where the cigarettes were located, got out of the car, and started to load the cigarettes into the car. Looney carried a shotgun, Crabtree a 25-20 rifle, and Furl appeared to be unarmed. Mr. Ikard, the sheriff, and Mr. Mumford, deputy, accosted the parties. Whereupon Looney and Crabtree opened fire on the officers. The sheriff shot and killed Looney, and Charlie Crabtree killed the sheriff. Mumford killed Crabtree. Furl ran away and, fleeing to Megargel, went to a hotel owned by Love. Love advised Furl to surrender to the officers, and Furl agreed that his advice was proper. For approximately two months Furl denied that either he or appellant had anything to do with the homicide, but finally testified to facts which brought about the indictment of appellant.

Bearing on the agreement of the parties to commit the offense and appellant's connection therewith, the accomplice Furl testified, in substance, that before he, Crabtree, and Looney went to the point where the cigarettes were hidden he had a conversation with appellant, Crabtree, and Looney in the town of Megargel approximately two hours before the homicide occurred; that appellant told Crabtree, Looney, and the witness Furl to go out and move the cigarettes and that he (appellant) would remain in Megargel and watch the law, and Clements, a deputy sheriff; that if the law tried to follow the parties appellant would try to detain them; that appellant instructed the parties to be careful and not let anybody slip up on them and catch them; that all appellant said about what the parties were to do was that he just asked them if they all had guns; that he offered the witness, Furl, a pistol, which he refused to take; that Looney had a shotgun and Crabtree a rifle; that when they reached the point where the cigarettes were hidden the witness understood the officers to say, "How about it, boys," or "Throw them down, boys," and that the shooting immediately started, resulting in the death of Crabtree, Looney, and Ikard; that the witness Furl ran to the town of Megargel and stopped in the Love Hotel, where he had a conversation with appellant, in which appellant asked him to leave and not to mention his name and agreed to take him away in his car; that appellant said, "They'll hang you if you stay here," and that he, the witness, replied that he was

going to give up; that appellant then said, "For God's sake, don't mention my name; I'll beg, borrow, steal, or hi-jack to get you out of it if you don't mention my name." The witness, Furl, testified further that shortly prior to the homicide he saw appellant in conference with Crabtree and Looney in appellant's domino parlor, but that he didn't know what they were talking about; that he saw them leave the town of Megargel together after the conference and go east in appellant's car.

Leaving out the testimony of the accomplice, Furl, the record shows that appellant's car was probably used to carry the stolen cigarettes from Graham to a point near Megargel, and that during the time the officers were watching the cigarettes a car making tracks similar to those of appellant's car came to a point within 150 yards of the cigarettes; that shortly after the homicide appellant and the witness, Furl, were together in the Love Hotel; that according to the testimony of Mrs. Jess Furl, wife of the accomplice, appellant told her the morning after the killing that he would do all he could to get her husband out of it, and that he had stayed in town the night of the homicide to watch the law while the parties were at the point where the cigarettes were hidden; that he wantd to go to the sheriff's funeral in order to help smooth things over; that appellant had always told her to tell her husband not to tell anything on him, and that he would make his bond and get him out. The record further shows, according to the testimony of Clements, a deputy sheriff, that he saw appellant pass the front of the drug store where he, Clements, was between five and ten minutes before said officer received information that the killing had taken place; that appellant walked down the street going west and crossed the street and went on down to a clubhouse; that he, Clements, ordinarily stayed around the drug store at night and that he ordinarily saw appellant around the same drug store every night; that said drug store was one of the places where the public generally congregated at night; that when appellant passed by the front of the drug store he was walking at a fast gait, and that he (appellant) went to the domino hall, which was just across the street from the drug store.

We find no testimony in the record which can be claimed to furnish corroboration of the accomplice, Furl, other than that above detailed. We are unable to reach the conclusion that these facts are sufficient to tend to prove that appellant had agreed to the commission of the offense, or that at the time of the commission thereof he was doing some part in the execution

of a common design.   It follows that the judgment must be reversed on account of the insufficiency of the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In a motion for rehearing the state insists that there is evidence aside from the accomplice which tends to connect appellant as a principal with this killing. That he was not present is admitted. Not being present, the record must present, aside from the testimony of the accomplice, evidence which must tend to show that prior to the killing appellant had agreed to or advised it, and that at the time of the homicide was then doing some act in furtherance of the common design, such as keeping watch to prevent interruption of those actually doing the killing, or was then engaged in procuring aid, arms, or means to assist the actual killers, or was then engaged in efforts to secure the safety or concealment of those doing the killing.   No witness saw appellant at the exact time of the killing, or pretends to say what he was doing at that precise time.   Clements, a deputy sheriff—them man who, according to the state's theory, appellant was supposed to be watching—said he saw appellant walk by the drug store some five or ten minutes before he (Clements) received information that the killing had occurred; that he saw appellant go on in a fast walk and enter a club room.   He did not say that appellant looked in the drug store and saw witness, nor does he attempt to say where the appellant had been prior to that moment.   He does say that was the first time he had seen appellant on that night.   He described no movements on appellant's part that indicated any unusual or unnatural conduct.   It is only by the greatest stretch of the imagination that the incident so related could be claimed to show or tend to show that appellant was then doing anything connected with or incident to the killing.   Neither do we think the evidence of Mrs. Furl, wife of the accomplice witness, supplies the corroborative evidence.   She says that on the next day appellant had a conversation with her in which "He told me it was too bad for Jess being out there, that he'd do all he could

to get him out of it, and he'd stayed in town that night to watch the law while they went out there." To our mind this evidence is lacking in probative force as showing or tending to show that appellant had agreed beforehand to the killing of the officers, or that he in fact did anything during the killing in furtherance of a common design to accomplish it, in the absence of which he could not be guilty as a principal. As was said in the opinion on the former appeal (291 S. W. 540) : "We regret the necessity of reversing cases for lack of evidence, but we must do our duty in the premises as we see it." As long as Article 718, which positively forbids a conviction upon the testimony of an accomplice unless corroborated by other evidence tending to connect accused with the commission of the offense, remains in the Code of Criminal Procedure, it is the duty of this court to give it effect. The principle embraced in the article mentioned may be thought by some to be unwise. In some jurisdictions it does not obtain, but it has been a part of our substantive law since the beginning of our state jurisprudence. It was incorporated as Article 653 in the Code of Procedure adopted in 1856, and has been brought forward without change in every re-codification for the past seventy years. Having regard to the provisions of such law we must decline to depart from our original opinion.

The state's motion for rehearing is overruled.

*Overruled.*