W. W. (BUCK) RAULIE, ALIAS BEE SMITH, V. THE STATE.

No. 15161. Delivered June 8, 1932.
Rehearing Denied December 21, 1932.
Reported in 55 S. W. (2d) 562.

The opinion states the case.

*Moore & Wilson,* of Amarillo, for appellant.

*Meade F. Griffin,* District Attorney, of Plainview, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment, twenty years in the penitentiary.

There are a number of bills of exception in the record. There was objection to the introduction of appellant's confes-

sion on the ground that same could only be used in connection with a trial for the substantive offense stated in the warning given to appellant, as that charged against him. In other words, it appears that in said warning it was stated that appellant was charged with being an accessory to assault to murder, while on the instant trial he was tried for robbery, hence the confession was not admissible. This trial was for the same acts, transaction and offense for which appellant was then charged. Without discussing the matter, this court seems to have uniformly held against such contention. Knuckles v. State, 55 Texas Crim. Rep., 6; Johnson v. State, 67 Texas Crim. Rep., 95; Coomer v. State, 97 Texas Crim. Rep., 102; Phillips v. State, 102 Texas Crim. Rep., 197; Pretre v. State, 112 Texas Crim. Rep., 463.

In bill of exception No. 2 appears complaint of the fact that the state's attorney had brought into the courtroom a suit of clothes, to the introduction in evidence of which appellant objected, and that the state's attorney continued to ask questions relating to said suit of clothes after the jury had been returned after they were withdrawn and it had been developed in their absence that there was a search of appellant's residence and under it, without a search warrant. The bill of exception states that the court concluded that the search of said private residence was illegal, and that all evidence obtained by such search was in violation of law, and particularly that the clothes should be removed from the courtroom and not used in evidence. It further appears that after this ruling was made the district attorney introduced in evidence the confession of the accused, and certain oral statements made by him by means of which evidence was discovered which tended to connect the accused with the crime. The complaint appearing in the bill of exception is that the state's attorney repeatedly asked thereafter about the things that were found at and under appellant's house. In the qualification of the bill it is stated at length that the clothes under the house, certain shoes, a .41 calibre pistol shell, and certain other evidence of some one having been under the house and fed there, were found as a result of statements made by appellant while in jail, both in the written confession and in oral statements. That such matters were conducive to establish appellant's guilt was clear. That they were not found by any search made before appellant confessed and made the statements referred to, is also clear. In the qualification of the bill it is certified by the court that the clothes under the house were found as a result of statements

made by appellant while in jail; that appellant told the officers while in jail to go search for and find the things, and that it would not be necessary to obtain a search warrant; that, after having so told the officers, they found under the home of appellant the clothes, shoes, shell, etc., the questions regarding which are objected to in this bill of exception. As qualified we do not think the bill of exception presents any error.

On the same night of the alleged robbery, at about 2 a. m., during which it appears the robber's hand was cut by glass and bled freely, it was in testimony that about 4 or 5 o'clock a. m., Flynn, the robber, went to the house of a Miss Dunaway and wished to call Mrs. Raulie over the telephone. The witness informed him that she had no phone, but that he could find one not far away. The next morning she discovered blood on her step and porch. Complaint of the reception of this evidence is in bill of exception No. 4. It was also in testimony by a Mr. Rose that he was night watchman in a mill, and about the hour mentioned, to-wit, 4:30 or 5 o'clock a. m. on the night of the robbery, Flynn came to his place and telephoned to the Raulies and got witness to put down for him on a piece of paper a street number obtained over the phone. This witness also observed that Flynn was bleeding and had his hand wrapped up in a handkerchief. Complaint of the reception of this testimony appears in bill of exception No. 3. At the time this testimony was introduced appellant was on trial upon an indictment containing two counts; one charging robbery, and the other with being an accessory to the crime of robbery. The testimony was pertinent and permissible. The fact that at the close of the testimony in the case the state elected to prosecute upon the first count charging appellant with robbery, would not seem to render effectual appellant's complaint in either of said bills of exception in view of the fact that no request appears to have been made after the state made its election, to have the jury instructed not to consider the testimony. In our judgment the testimony would have been admissible even had such request been made.

If the state's theory be correct in this case, appellant and one Flynn were operating together, in pursuance of a conspiracy, to rob the members of a group of men who were engaged in a crap game at about 2 o'clock in the morning of February 15, 1931, in the town of Plainview. The testimony shows that appellant had brought Flynn from Clovis, New Mexico, to Plainview that day; that he had supplied Flynn with a suit of clothes and a handkerchief, and had brought him down town

and left him about 4 o'clock in the afternoon of the day preceding the night of the robbery, and had seen him again at 9 o'clock that night. The testimony further discloses that about 10:30 that night appellant had carried one Cawthorn home in his car. Cawthorn testified that appellant had in the car at that time a pistol which he stated to Cawthorn was loaded. He exhibited the pistol to Cawthorn. At about 11:30 p. m. appellant went to the place where the gambling was going on and engaged in the game, stating at the time that he wanted to be notified when 1 o'clock came as he had an appointment. At 1 o'clock he left the room, saying he was going to get some whisky, returned with some whisky, and presently left the room again and came back, and in a few minutes thereafter Flynn knocked at the door, came in, breaking the glass in the door, holding in his hand a pistol, and commanded the party to put their hands up, and proceeded to go through their pockets. Appellant put up his hands along with the others, and the testimony of a number of witnesses was to the effect that appellant fussed, kicked, and hit at and abused Flynn while he was going through his pockets, but did nothing further. The testimony shows that after having gone through the pockets of two or three of the party Flynn approached Cawthorn who threw himself through the door of the bath room and on the floor, at which time Flynn began shooting toward the left or north; this appellant being toward his right and south. Flynn shot three members of the party, and then left the room. The pistol was picked up just outside the house, and was identified as appellant's pistol. In his confession appellant admitted that the pistol was his, and claimed that Flynn had stolen it from him that night. Cawthorn testified that the pistol found outside the door was very much like the pistol he saw in appellant's possession at about 10:30.

Without setting out at greater length the facts in this case, they seem sufficient to support the conclusion reached by the jury that appellant and Flynn were coprincipals working together to rob the parties engaged in said game. Manifestly the object of the robbery would be the acquisition of the money of said parties, and the object of the conspiracy would not be complete until the money so obtained had been divided between the parties thereto. The movements of Flynn and his efforts in the nighttime to locate and get back to the home of appellant would be provable as circumstances affecting the question of the acting together of appellant and Flynn. In his confession appellant admitted that when he got home after the rob-

bery he found Flynn there, and that Flynn was wearing a suit of clothes furnished him by appellant. Appellant claimed he made Flynn give up the clothes, but further said he concealed Flynn under his house, and put the clothes under there with him, and that he told his wife to keep Flynn out of sight and not let anybody get to him while he was under the house.

Appellant's bills of exception Nos. 5, 6, 7, 8, and 9 complain of arguments made by the prosecuting attorney. Each of these bills is qualified at length. A discussion of the arguments complained of and of the contentions of appellant regarding same would occupy space which we do not deem the questions involved of sufficient importance to require. We do not believe any of the arguments of such character as should call for a reversal of the case.

Believing the evidence sufficient to justify the jury's conclusion of guilt, and that no reversible error appears, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the motion for rehearing, specific complaint is made of the treatment of paragraphs 8 and 9 of the court's charge, which we quote as follows:

"You are instructed that in this State no person can be convicted upon his statement alone unless you believe, beyond a reasonable doubt, that such statement is true, and that said statement connects the defendant with the commission of the offense, as charged in the indictment, and then you cannot convict the defendant unless you further believe from the evidence, beyond a reasonable doubt, that there is other and additional evidence in the case corroborative of such statement, connecting the defendant with the commission of said offense, as alleged in the indictment, which establishes to your satisfaction, beyond a reasonable doubt, that the offense with which the defendant is charged was committed, and that the defendant is guilty of the commission of said offense. Therefore, unless you believe from the evidence, beyond a reasonable doubt, that the statement purporting to be signed by the defendant, introduced in evidence, is true and that it connects the defendant with the commission of the offense, as alleged in the first count of the indictment, and that you further find and believe from the evidence, beyond a reasonable doubt, that there is other evidence in the case, independent of said statement, and corroborative thereof, which establishes to your mind, beyond a reasonable doubt, that the offense with which the defendant is charged,

was committed, and that the defendant committed said offense, as alleged in the indictment, either alone or acting together with Mickey Flynn as a principal, you will acquit the defendant, and say by your verdict not guilty.

"You are further instructed by the Court that when a statement, or confession, of a defendant is introduced in evidence by the State, and when such statement, or confession, contains exculpatory or mitigating statements, then the whole of such a statement, or confession, is to be taken together as true; and, the State is bound by such exculpatory or mitigating statement unless such exculpatory statements or mitigating statements are proven, from the evidence, beyond a reasonable doubt, to be untrue; and, if you have a reasonable doubt thereof. you will acquit the defendant, and return a verdict of not guilty."

The appellant's written confession was introduced in evidence. It appears therein that the appellant resided at 1507 West 15th Street in the city of Plainview, Texas; that he was present at a "crap game" at Joe Ferrell's house on the night of February 14, 1931; that he was acquainted with Joe Kelley, alias Mickey Flynn, and about 3 or 4 o'clock in the afternoon had brought Kelley from the appellant's house to a barber shop, and there provided him with one of the appellant's suits of clothes. About 9 o'clock at night, Kelley was seen by the appellant to pass Pierce's Cafe. At the time of the robbery, the man who committed the offense was not seen by the appellant as his face was turned to the wall. Before returning to his home, the appellant delivered the keys to his automobile to Barto Cawthon. When the appellant reached his home about 6 o'clock in the morning, Kelley was there. From the confession we quote: "When I got home on Sunday morning, this Joe Kelley, or Mickey Flynn, was at my house. This fellow had his hand cut, but I could not say for sure which of his hands it was that was cut, but he had one pretty badly cut. Flynn then told me that he and Barto had framed this hold-up, and that when Barto jumped through the door he got nervous and started shooting. I then tore my clothes off Flynn, and made him get under the house at my place, and I put my clothes down under the house with him. I told Flynn to stay down there under the house, and I fed him two or three times, and Flynn told me about the hi-jacking, and that he give all the money to Barto. The pistol which the officers showed to me last night, was my pistol, and I had gone to town. The last time I saw Flynn he was still under my house, and I have not seen him. Flynn told me that whoever took him was going to take

him to out around Melrose, N. Mex. I told my wife to keep Flynn and not let nobody get away with him, and not say nothing about it, and she said she would not. When I first got home, my wife said Mick is in there in the toilet, and I went in there and then is when I tore the clothes off him. I brought Mickey from my folk's house near Clovis to Plainview Saturday."

In criticism of the eighth and ninth paragraphs of the court's charge, appellant claims that the court assumes that the confession was wholly inculpatory in its bearing upon the first count of the indictment, when, according to the appellant's claim, the confession was exculpatory to the effect that the appellant's first connection with the robbery was after its commission. With the appellant's interpretation, we find ourselves unable to concur. The summary of the evidence set forth in the original opinion makes manifest that the conclusion of the jury that the appellant was present at the time the robbery was committed was justifiable. The appellant's presence at the time of the robbery cannot be ignored in appraising his confession as to its bearing upon the issue of a conspiracy. It was upon circumstances that the state relied, and the jury was given a proper charge upon the law of circumstantial evidence. In article 69, P. C., it is said: "Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act."

The evidence adduced upon the trial, including the appellant's confession, is deemed sufficient to have brought the appellant within the provision of the statute mentioned, and warranted the jury in the conclusion reflected by the verdict, namely, that the appellant and Flynn were principal offenders within the meaning of the law. Among the illustrative cases are Rowan v. State, 97 Texas Crim. Rep., 130, 260 S. W., 591; Coomer v. State, 97 Texas Crim. Rep., 588, 262 S. W., 495; Middleton v. State, 86 Texas Crim. Rep., 307.

The motion for rehearing is overruled.

*Overruled.*