**STATE of Delaware**

v.

**Edward FRISBY.**

Superior Court of Delaware.

New Castle.

March 14, 1968.

Jay H. Conner, Deputy Atty. Gen., Wilmington, for the State.

Edward Z. Sobocinski, Wilmington, for defendant.

STIFTEL, President Judge.

Edward E. Frisby has moved for acquittal or in the alternative for a new trial as the result of his conviction for burglary fourth degree in the Superior Court. This opinion deals with Frisby's motion.

The controversy arose out of events which occurred on June 1, 1967. On that evening several unidentified men were seen inside a service station located at Fourth and Pine Streets several hours after the station had been closed. An eye witness on the scene testified that she saw one of the men carry something outside the station toward a car. She could not identify the object or any of the individuals involved. She did, however, note the make and year of the car used by the men she saw, as well as the license plate number. She reported these, after some delay, and recounted the events that she had seen, to the police. A description of the car and its license plate number was broadcast over the police radio, along with the information that the car was suspected of being involved in a burglary. Fifteen minutes after the broadcast, about 12:30 A.M., the police observed the above mentioned automobile, while they were patrolling in a police van. The police signalled the driver to stop, but the occupants of the car tried to flee from the police at high speed. The officers gave chase, and forced the driver to stop the car. At that point one of the occupants escaped. The police ordered the other two suspects out of the car at gunpoint, placed them against a wall, and frisked them for weapons. One of the subjects was Frisby, who was the driver and owner of the car. Frisby was then arrested for speeding, night prowling, and disregarding the command of a police officer, and was handcuffed at the scene of the arrest.

The police officers then advised Frisby of his *Miranda* rights, then placed the men in a patrol wagon. The police drove the van, and Frisby's car, to the site of the service station which had been burglarized. After arriving at the service station, the police again warned Frisby of his *Miranda* rights and requested permission to search the trunk of the car. Frisby replied, "Go ahead", and said that he had nothing to worry about.

The police opened the trunk lid, without a search warrant, and found a television set later identified as the one stolen from the service station. As a result of the search, Frisby was later arrested for burglary in the fourth degree.

At the trial the State offered the television set in evidence. Frisby objected to the State's offer on grounds that his consent to the search was involuntary and that it was not based on an intelligent waiver of his constitutional rights. After a hearing without a jury, the Court ruled that there was voluntary consent. The issue of voluntariness was also presented to the jury which, by convicting Frisby of fourth degree burglary, also found the consent to have been voluntary.

Defendant's motion for acquittal or new trial raises two issues that must be considered: (1) Was his consent given under such coercive conditions, express or implied, as to render his consent involuntary; and (2) if not, was the consent nonetheless involuntary because failure of the police to tell Frisby that anything found during the search could be used against him precluded an "intelligent waiver" of his rights? The Court decides both questions in the negative.

Frisby argues that his consent to examine the trunk was involuntary because it was given while he was under arrest, while he was handcuffed, and shortly after having been "frisked" at gunpoint.

■ Although the police did make the arrest at gunpoint, they did so after a high speed chase and after one rider in the car escaped. Under those circumstances a gunpoint arrest was necessary to effectuate the arrest and for the self-protection of the officers. Moreover, by the time the defendant gave consent, the police had long before holstered their guns.

Furthermore, the record indicates the use of handcuffs by the police was unaccompanied by any overt coercive action or attitude on their part. Indeed, the fact that the police twice advised the defendant of his *Miranda* rights indicates that they attempted to dispel any overt atmosphere or threat of coercion.

The only coercion that might be found is that which is inherent in police custody and in being handcuffed. But to base the granting of a new trial upon such implied coercion is to hold that, as a matter of law, a person who is in police custody or who is handcuffed while in custody, cannot consent to a search and seizure. The Court declines to so hold because such a result "with all of its obvious ramifications, would seriously jeopardize police inquiry and investigation considered both lawful and necessary", Schaffer v. State, 5 Storey 115, 55 Del. 115, 184 A.2d 689, 694 (Sup. Ct. 1962).

For the reasons above, the Court holds that Frisby's consent was voluntary. See Kerschner v. Boles, 212 F.Supp. 9 (D.C.W. Va., 1963); People v. Smith, 210 Cal.App. 252, 26 Cal.Rptr. 620 (1962).

The defendant further contends that as a prerequisite for the admission of any evidence obtained by a consent search, the police must warn the defendant of his right to refuse consent to the search and that any evidence so obtained could be used against him in court.

I conclude that the police did warn the defendant of his right to refuse consent to the search of the trunk and this evidence was considered by me and heard by the jury in passing on the issue of voluntary consent to the search. However, it is clear

from the evidence that the defendant was not told that any evidence obtained as a consequence of the search could be used against him in court. Therefore, the only remaining issue is whether the police were required to tell Frisby of the legal effect of his consent to the search.

Thus far the United States Supreme Court has not made this a requirement. While defendant's argument has been accepted by two Federal District Courts, see United States v. Moderacki (280 F.Supp. 633 (D.C.Del., 1968)); and United States v. Blalock, 255 F.Supp. 268 (C.D.Pa., 1966); the Federal Circuit Courts of Appeal are divided on the issue. See United States v. Nikrasch, 367 F.2d 740 (C.A. 7, 1966); contra, Gorman v. United States, 380 F.2d 158 (C.A. 1, 1967). Thus far none of the State Courts confronted with the question have made a Fourth Amendment warning a *sine qua non*. See State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Forney, 181 Neb. 757, 150 N.W.2d 915 (1967); State v. McCarty, 199 Kan. 116, 427 P.2d 616 (1967); People v. Roberts, 246 Cal.App.2d 715, 55 Cal.Rptr. 62 (1966); see also, People v. Ziegler, 358 Mich. 355, 100 N.W.2d 456 (1960); State v. McPeak, 243 N.C. 243, 90 S.E.2d 501 (1955); People v. Trent, 85 Ill.App.2d 157, 228 N.E.2d 535 (1967).

■ Although there is merit in requiring a Fourth Amendment warning similar to that required in a *Miranda* warning, and alhough it would be helpful for the police so to advise any defendant whose consent is requested, such warning is not required under Delaware law, and this Court declines to adopt the suggested rule.

Consequently, defendant's contentions that the consent was not voluntary and was not the product of an "intelligent waiver" of his constitutional rights are rejected.

Because the television set was properly admitted into evidence, the motions for acquittal or new trial are denied.

It is so ordered.