**UNITED STATES of America, Plaintiff,**

**v.**

**Carlton Eugene STROUTH and Stanley Wayne Strouth, Defendants.**

**Crim. No. Cr. 7152.**

United States District Court, E. D. Tennessee, Northeastern Division.

April 23, 1970.

———◆———

John L. Bowers, Jr., U. S. Atty., Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Robert Widener, Bristol, Tenn., for Carlton Eugene Strouth.

Wendal D. Jackson and Thomas L. Rasnic, Bristol, Tenn., for Stanley Wayne Strouth.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

Agents of the federal bureau of narcotics and dangerous drugs and the Tennessee bureau of criminal identification went with the defendant Mr. Stanley Wayne Strouth to his living quarters on February 6, 1970 and, after his request, seized approximately 75,000 tables containing HC$l$ and pentobarbital, which are depressant or stimulant drugs within the meaning of 21 U.S.C. § 321(v). Mr. Strouth (hereinafter, the defendant) moved the Court to suppress this evidence, claiming that such contraband was illegally seized without a warrant. Rule 41(e) (1), Federal Rules of Criminal Procedure. Evidence on the issues of fact necessary to a decision of the motion was received by the Court on April 10, 1970.

 It is undisputed that the aforementioned agents entered the defendant's quarters without a warrant, not incident to a lawful arrest, although perhaps under exceptional circumstances; accordingly, the burden was upon the prosecution to produce facts to justify the seizure of this contraband without a warrant. Weaver v. United States, C.A. 5th (1961), 295 F.2d 360, 361 [2]. The burden on the prosecution to have proved the waiver by the defendant of his constitutional right to be secure in his home from unreasonable searches and seizures is particularly heavy, if the defendant was under arrest at the time of his waiver. Cf. Burke v. United States, C.A. 1st (1964), 328 F.2d 399, 402 [5], certiorari denied (1964), 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52, rehearing denied (1965), 380 U.S. 927, 85 S.Ct. 902, 13 L.Ed.2d 815.

 The prosecution claims that the defendant waived any objection to the admission of this contraband as evidence by orally requesting the officers to remove it from his residence and to allow him to turn over same to them. The right given by the Fourth Amendment is a personal right which " * * * may be waived * * * " by the defendant. Katz v. United States (1967), 389 U.S. 347, 359, 88 S.Ct. 507, 19 L. Ed.2d 576, 586 [n. 20]; Fox v. State (1964), 214 Tenn. 694, 701–702 [4] [5], 383 S.W.2d 25, certiorari denied *sub nom.* Thomerson v. Tennessee (1964), 380 U.S. 933, 85 S.Ct. 938, 13 L.Ed.2d 820, citing Hampton v. State (1932), 148 Tenn. 155, 252 S.W. 1007, Frix v. State (1923), 148 Tenn. 478, 256 S.W. 449, Byrd v. State (1929), 161 Tenn. 306, 30 S.W.2d 273, and Simmons v. State (1962), 210 Tenn. 443, 360 S.W.2d 10.

The defendant, who is 25 years of age, and was graduated from high school, went voluntarily to the Bristol, Tennessee police station as the result of a telephoned request he received at about 7:00 o'clock, p. m., on the above date. He made his presence known to uniformed officers in the reception room and was referred to a federal agent, Mr. Virgil L. Miller, who asked the defendant his name. The defendant identified himself to Mr. Miller and was then requested by a state agent, Mr. Gregory, to accompany him to the more private office of the chief of police. Therein, the defendant saw his brother and codefendant Mr. Carlton Eugene Strouth, Messrs. Miller and Gregory, and agents Moss and James F. Keasling.

Although the defendant claims that he was scared and nervous and that his " * * * mind went blank * * * " at about this time, he testified he remembered that Mr. Keasling, a state

agent, showed him his (the latter's) identification card and also identified the other agents in the room; that Mr. Keasling advised him of his constitutional rights; that he recalls he was told that he was entitled to the assistance of counsel at all times; that he was questioned thereafter by all four agents; that he " * * * assumes * * * " he gave all his answers in the presence of his brother; that, upon being asked a question, which suggested to him that he was about to be charged with a violation of the criminal law, he requested the assistance of an attorney; that, at no pertinent time, did he withdraw this request for counsel; that Mr. Moss continued to question him thereafter; that he signed a form giving the officers his consent to search his living quarters; that he was transported approximately five miles in some seven or eight minutes to his place of residence, during which time the interrogation of him was continued by some of the officers; and, that the officers discovered the contraband, where he said it would be, and removed it from his residence.

Messrs. Miller and Keasling testified that, before the defendant was asked any questions, except his name, he was advised by the latter of his constitutional rights to silence, to counsel and against self-incrimination, and offered the use of a nearby telephone; that Mr. Keasling then advised the defendant that his brother had implicated him in a narcotics violation; that his brother requested at once to be permitted to leave the room; that, thereupon, the defendant inquired of his brother: "how much have you told them?", to which his brother and codefendant responded: "everything; tell 'em the truth", and left the room; that the defendant, in response to interrogation, admitted that he had taken narcotic drugs from a drug-manufacturing firm, while he was employed there; that he had stored a large quantity thereof in the attic of his residence and wanted to get the drugs out of his house and wanted to turn them over to the officers; that, when the de-fendant was asked what he had done with the money he had received from his sales of the drugs, he stated he thought he might need a lawyer; that Mr. Keasling then again offered him the use of the telephone, to which the defendant did not react; that the defendant made no further response to any question propounded to him within the office, except that Mr. Keasling asked him if he wanted to give the officers his written consent to search his residence; and, that this defendant signed a consent-to-search form, but that he was not informed, before executing such form, of his constitutional right to demand a search warrant.

Mr. Keasling testified further that he did not ask any questions of the defendant en route to his residence and did not overhear any questions asked of him by any of his fellow officers, although he considered he had obtained sufficient information and authority to make the search theretofore and was paying no particular attention to the conversation in the rear seat of the vehicle which he was operating. The agents and the defendant continued to the place of his residence, where the 75,000 tablets aforesaid were retrieved by the agents from the attic and seized. It is not contended that any other search of the defendant's residence was made or that any other items of his property were seized.

Although, after the defendant had indicated to the interrogating officers in any manner at any stage of the process that he wished to consult with an attorney before speaking further, all questioning of him should have ceased, Miranda v. Arizona (1966), 384 U.S. 436, 444–445, 86 S.Ct. 1602, 16 L.Ed.2d 694, 707 [4], [5], [6], rehearing denied sub nom. California v. Stewart (1967), 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121, and any statement he may have made thereafter will be excluded on the trial, this does not preclude a finding by the Court that the defendant waived his right under the Fourth Amendment to the federal Constitution for his resi-

dence to be secure from unreasonable searches and seizures, *infra*.

■ The Court finds that, after being warned of the rights he had under the Fifth and Sixth Amendments to the Constitution, and before exercising his constitutional right to the assistance of counsel, the defendant admitted unequivocally, specifically, and voluntarily to the agents that he had a quantity of contraband stored in the attic of his residence, and that he wanted these tables removed therefrom and turned over to the agents. The Court finds no evidence of misrepresentation of any fact by the agents, no evidence of any demand or request (at that time) by the agents that they be allowed to search the defendant's premises, and no evidence that the defendant was under duress or any type of coercion, actual or implied, when he volunteered his determination that the narcotics be removed from his residence and turned over to the agents. It is not clear whether the defendant had been formally arrested at this point in time, but in any event, the fact that he may have been in custody of the agents was " * * * not itself sufficient to render the consent involuntary. * * *" United States v. Jordan, C.A. 2d (1968), 399 F.2d 610, 614 [3], certiorari denied (1968), 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469, citing Gorman v. United States, C.A. 1st (1967), 380 F.2d 158, 163–164, and referring also to United States v. Paradise, C.A. 2d (1958), 253 F.2d 319; Schaffer v. State (Del.Sup., 1962), 184 A.2d 689, certiorari denied (1963), 374 U.S. 834, 83 S.Ct. 1882, 10 L.Ed.2d 1056. Under the above circumstances, the Court finds and concludes that the defendant waived any objection he might otherwise have enjoyed to the admission of the evidence he produced and surrendered against himself.

■ Whether the defendant waived his right to be secure in his residence against unreasonable searches and seizures is a question of fact. *Cf.* Rogers v. United States, C.A. 10th (1966), 369 F.2d 944, 948 [10], certiorari denied *sub nom.* Ferguson v. United States (1967), 388 U.S. 922, 87 S.Ct. 2125, 18 L.Ed.2d 1371, rehearing denied (1967), 389 U.S. 890, 88 S.Ct. 20, 19 L.Ed.2d 205. A consideration of this issue depends upon the particular facts and circumstances of each individual situation, and there are no hard and fast rules by which the presence or absence of some particular fact will bind the Court to a particular decision. The determination rests ultimately on the interplay of the various facts presented.

■ The undisputed facts that the defendant voluntarily revealed the location of the narcotics in his residence and accompanied the agents there for the purpose of having them removed from his residence and surrendered them to the agents, after having waived his privilege against such seizure, " * * * are persuasive. * * *" *Cf. ibid.,* 369 F.2d at 948 [10], [12]. The defendant's oral consent to this seizure, without any compulsion, having been preceded by the foregoing incriminatory statements, suggests there is no reason to assume that the defendant would not allow the seizure of the evidence, after he had volunteered these damaging admissions. Gibson v. Peyton, D.C.Va. (1966), 262 F. Supp. 574, 577–578 [7]; State v. Bindhammer (1965), 44 N.J. 372, 209 A.2d 124; Anderson v. State (1964), 237 Md. 45, 205 A.2d 281; People v. Guyette (1964), 231 Cal.App.2d 460, 41 Cal.Rptr. 875; Range v. State (1963), Fla.App., 156 So.2d 534; Armwood v. State (1962), 229 Md. 565, 185 A.2d 357; People v. Weire (1961), 198 Cal.App.2d 138, 17 Cal.Rptr. 659; Crider v. State, (1966), 114 Ga.App. 523, 151 S.E.2d 792; People v. Davis (1957), 48 Cal.2d 241, 309 P.2d 1; United States v. Busby, D.C.D.C. (1954), 126 F.Supp. 845, 846 [4], citing Higgins v. United States, (1954), 93 U.S.App.D.C. 340, 209 F.2d 819, 820 [2]; Stratton v. Commonwealth (1953, Ky.), 263 S.W.2d 99; Raulie v. State (1932), 122 Tex.Cr.R. 348, 55 S.W.2d 562. Indeed, although it was unnecessary for his agreement for the officers to enter his home and re-

cover this contraband to be in writing, Cameron v. State (1961), 171 Tex.Cr.R. 224, 346 S.W.2d 845, even after demanding the services of an attorney, the defendant undertook to grant such permission again by executing a consent-to-search form.

■ The Fourth Amendment to the federal Constitution guarantees the " * * * right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *", and provides that no warrant for a search of a person's premises " * * * shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A search implies an *exploratory* investigation for things which are concealed, and the mere acceptance by officers of that which a defendant turns over to them voluntarily is not "a search" within the purview of the Fourth Amendment.

■ The evidence shows conclusively that the defendant accompanied the agents to his residence, at his invitation, for the purpose of removing the contraband therefrom and handing it over to the agents; thus, it was immaterial that the agents entered therein without a warrant, and the contraband is admissible in evidence herein. *Cf.* Windsor v. United States, C.C.A. 6th (1923), 286 F. 51, 55 [5], certiorari denied (1923), 262 U.S. 748, 43 S.Ct. 523, 67 L.Ed. 1212. Where a defendant admitted his guilt of a crime to the officers, told them of the presence in his home of incriminating evidence, and consented to the officers' going to his home to recover the evidence therein stored, the implication was strong that such defendant had waived his right against a warrantless seizure of the evidence, United States v. Mitchell (1944), 322 U.S. 65, 69–70, 64 S.Ct. 896, 88 L.Ed. 1140, 1143; and, where another defendant agreed to, and did, take agents to the spot where narcotics were kept, without duress, coercion or misrepresentation, she suffered no deprivation of her constitutional right to be secure from unreasonable searches and seizures, United States v. Smith, C.A. 2d (1962), 308 F.2d 657, 663 [9], 663–664 [10]; see also United States v. Perez, C.A. 2d (1957), 242 F.2d 867, 870 [5], certiorari denied (1957), 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed.2d 1539, but overruled on other grounds in United States v. Viale, C.A.2d (1963), 312 F.2d 595, 599 [4], certiorari denied (1963), 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199; and, Raimondi v. United States, C.A. 9th (1953), 207 F.2d 695, 696.

In closer analogy to the instant situation, where officers advised a defendant that they had information that he had narcotics secreted within his body and asked for permission to search his body, the defendant gave his oral permission but refused to put his consent in writing. The officers thereupon reminded the defendant that he would shortly be going to jail, where any narcotics secreted within his body would be discovered and could be removed therefrom, and advised him that it might be better if he gave the drugs to the officers, rather than having them discovered in jail. Such defendant, thereupon, removed the narcotics from an orifice in his body and surrendered them to the officers. The trial court found that there was *no search* of that defendant's body by the officers, and that the defendant's voluntary production and surrendering of evidence against himself constituted a waiver of his constitutional right against unreasonable searches and seizures. People v. Houston, C.A.Calif. (1958), 164 Cal.App.2d 396, 330 P.2d 456, 457–458 [1], [2, 3]. In yet another situation, during a surveillance, officers approached a defendant and advised him they had, and showed him, a warrant for his arrest for bookmaking. The defendant stated he " * * * might as well cooperate * * *" and voluntarily handed over to the officers a quantity of betting slips and other papers, without any demand or request by the officers therefor. In affirming this conviction, the appellate court said the

* * * constitutional prohibition against use of evidence obtained by an unreasonable search and seizure (Mapp v. Ohio, 367 U.S. 643, 646, 81 S.Ct. 1684, 6 L.Ed.2d 1801 (1961)) does not require exclusion of items of evidence which the defendant, as here, voluntarily hands over to police officers. The fact that the defendant was under arrest when he turned over the slips and papers, and may have been searched later if he had not done so, does not change the fact that the officers obtained this evidence as a result of his voluntary act. Consent that is unequivocal, specific and voluntarily given without the presence of duress or coercion, actual or implied, is effective as a waiver of any objection to the admission of the evidence so obtained. See Commonwealth v. Wright, 411 Pa. 81, 190 A.2d 709 (1963); Anderson v. United States, 5 Cir., 255 F. 2d 96 (1938). * * *

Commonwealth v. Waughtel (1964), 204 Pa.Super. 40, 201 A.2d 217, 218 [1–3].

▆ The thrust of the defendant Strouth's argument is that, once he had expressed to the agents his feeling of the need to consult with an attorney before answering any further questions, the agents were precluded from interrogating him further, even to the extent of requesting him to sign a written statement of his consent for the agents to search his premises, and that evidence of all which occurred thereafter must be suppressed. There is authority for the proposition that, even where a defendant has been fully forewarned of his constitutional rights to remain silent, to counsel and against incriminating himself, before investigating officers may conduct a search and seizure of him or his premises, they must warn him also of his right under the Fourth Amendment to demand a search warrant, to validate the search and seizure and render the fruits thereof admissible in evidence. United States v. Nickrasch, C.A. 7th (1966), 367 F.2d 740, 743–744 [1, 2]; United States v. Blalock, D.C.Pa. (1966), 255 F.Supp. 268, 269–270 [1–3], [4–6]; United States v. Moderacki, D.C.Del. (1968), 280 F.Supp. 633, 635 [1], [2], 635–636 [3], [4]. However, the force of Nickrasch, supra, was eroded subsequently by the assertion by the Seventh Circuit that its earlier statement, that " * * * no true consent can be given absent an apprisement of petitioner's Fourth Amendment rights * * *" was thought to be " * * * of dubious propriety * * *." Byrd v. Lane, C. A. 7th (1968), 398 F.2d 750, 755 (in which there were three opinions of the panelists), certiorari denied (1969), 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564.

There are other judicial utterances which might appear to render the defendant's argument viable. Where a defendant was arrested on one floor of a building under an invalid arrest warrant, told agents that contraband was stored on another floor of the same building, and that the elevatorman would take them to that floor, after the defendant had been arrested and was told he could not consult a lawyer, and while he was confronted by a number of agents, his consent for a search of all the floors of the large loft building, and the seizure of property in the lofts on separate floors without a search warrant, was held not to be the product of a voluntary consent. United States v. McCunn, D.C.N.Y. (1930), 40 F.2d 295, 296 [3]. And, where, inter alia, a defendant refused to sign a consent-to-search form without consulting a lawyer and was induced so to do by agents, on the false representation by the agents that they had the right to search anyway and, by implication at least, that a lawyer would avail the defendant nothing, when, if properly advised, the defendant would have known that there was no right for the agents to search without a warrant, evidence thus obtained was held to be inadmissible. Bolger v. United States, D.C.N.Y. (1960), 189 F.Supp. 237, 252–253 [13–14], affirmed C.A. 2d (1961), 293 F.2d 368, reversed on other grounds (1963), 371 U. S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390.

Here, the situation is quite different from those above: the defendant had been forewarned of his right to remain silent and of his right not to supply any evidence incriminating himself. The defendant admits readily that he was aware of his right to the assistance of counsel. While thus aware, and while also " * * * more acutely aware * * * that he * * * [was] * * * not in the presence of persons acting solely in his interest * * * ", Miranda v. Arizona, *supra*, 384 U.S. at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 721 [26], he orally waived voluntarily his right to demand a warrant before the agents entered his premises and retrieved the contraband he had told them was there. After the defendant had been advised of his Fifth and Sixth amendment rights at the earliest critical time in this investigation, it was not then incumbent upon the agents to duplicate mechanistically these warnings during the interrogation or to warn him further of his Fourth Amendment right to demand a search warrant, when he had already admitted his constructive possession of narcotics and waived voluntarily his right not to have his residence entered without a warrant. See Gorman v. United States, *supra*, 380 F. 2d at 164 [10–16], [17–18]; State v. Frisby (Del.Super.), 245 A.2d 786; State v. Leavitt (R.I.), 237 A.2d 309; State v. Williams, 248 Or. 85, 432 P.2d 679.

The facts that, after expressing his feeling of the need to consult an attorney, the defendant (a) made no further response to any question asked him by any interrogator, and (b) undertook to give the agents his written consent to search his residence, indicates stoutly to this Court that the pressures of his custodial interrogation had been overcome, and that it had been insured that the defendant knew he was free to exercise his privilege against incriminating himself in any manner " * * * at that point in time. * * * " Miranda v. Arizona, *supra*, 384 U.S. at 478, 86 S.Ct. 1602, 16 L.Ed.2d at 726. It is obvious to the Court that the defendant knew when the agents went there, they would surely find in the attic of his residence contraband, evidence of which could be used against him in this prosecution. He seems not to have retreated in the slightest from his determination to have the contraband removed from his premises and turned over to the agents; his only retreat appears to have been from further response to his interrogators' questions until he had consulted a lawyer. Even if the agents were not authorized to ask the defendant, after his demand for a lawyer, if he would buttress in writing his earlier oral consent to enter his residence and remove the contraband, this did " * * * did not vitiate the prior oral consent. * * * " United States v. Jordan, *supra*, 399 F.2d at 614 [3].

The motion of the defendant for the suppression of the evidence obtained by seizure from his residence hereby is

Denied.