**UNITED STATES of America,
Plaintiff,**

v.

**Charles Buford HAUN, Defendant.**

**No. CR–2–75–33.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Nov. 13, 1975.

William T. Dillard, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Carleton W. Smith, Greeneville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant Mr. Haun moved the Court to suppress evidence of an unregistered Thompson M–1 45-caliber submachine gun seized from him by a federal law enforcement officer herein, Rules 41(f), 12(b), Federal Rules of Criminal Procedure, on the ground that such seizure infringed his right to be secure in his home against unreasonable searches and seizures, Constitution, Fifth [sic: Fourth] Amendment. The Court conducted an evidentiary hearing on this issue on November 10, 1975 and took the matter under advisement to accord counsel an opportunity to submit briefs with authorities.

Mr. Larry J. Fulton, a special agent of the Federal Bureau of Investigation (FBI), received information by telephone on October 10, 1974 from the Morristown, Tennessee police department that a felony had been committed in the form of the theft of a weapon from the National Guard armory in that community, that such weapon had been seen in the possession of the defendant by an as then unidentified person, and that there was suspicion that such a weapon might have been utilized in the commission of a bank robbery in the area. Alerted to quick reaction by the last-mentioned prospect, Mr. Fulton went immediately to the Morristown police headquarters to investigate. There, in the detectives' office at about 2:00 o'clock, p. m., he met the defendant Mr. Charles Buford Haun. Mr. Haun had been arrested about four hours earlier by Morristown police officers on a charge of driving a motor vehicle under the influence of an intoxicant and lodged in jail.

Mr. Fulton identified himself to Mr. Haun and advised him that he (the agent) wished to talk with the defendant about the theft of government property " * * * concerning weapons * * * ".*

---

* Mr. Haun denied in his testimony that such a statement was made to him by the FBI agent before he was questioned concerning whether he owned or possessed a gun. However, Mr. Haun stated that Mr. Fulton asked him if he " * * * had any stolen government property * * * " and inquired whether he had in his possession any grenades, mortars or machine guns. Mr. Haun testified that it was his impression that the agent's interest was " * * to run-down the gun * * * ", and that it was for this reason that he waived his right to the assistance of counsel and cooperated voluntarily with the officers.

It is incredible to the Court that Mr. Haun would have denied initially his possession of a submachine gun if his reason for waiving his right to the assistance of counsel earlier had been because of these beliefs he stated and his desire to cooperate. Mr. Haun contended at one time that he had not signed the consent for the search of his automobile until after it had been searched; however, he admitted subsequently that he could have been wrong in that contention and commented several times on the fact that these events had all occurred more than a year ago. The Court accords Mr. Haun limited credibility on this testimony and gives it no weight.

The agent advised Mr. Haun of his rights to silence and counsel and against self-incrimination. The defendant signed the customary written form waiving those rights, which he understood.

The agent inquired whether Mr. Haun had any weapon. The defendant replied that he had only a 38-caliber Smith & Wesson pistol and a 30.06 rifle. Mr. Fulton then inquired specifically whether Mr. Haun had been in possession of a Thompson submachine gun. At that point, the defendant admitted that he had been in possession of such a weapon, and that the information he had given the agent earlier that he had never had another gun had been incorrect. He stated that he had long desired to acquire a submachine gun as a collector's item, that he had intended to register the weapon, " * * * but was afraid to tell anyone because I have been told that a machine gun is illegal according to federal laws. * * * " He agreed to give the officers a complete statement in writing afterward and gave such a statement on the October 24 following.

The defendant signed two forms, authorizing Mr. Fulton " * * * to conduct a complete search of my premises [and his automobile] located at 1021 North Liberty Hill Rd., Morristown, Tennessee Lot # 10 * * * " and authorized such agent " * * * to take from my premises * * * a Thompson machine gun, serial number not known. * * * " Mr. Haun testified that he gave these consents to search voluntarily and understandingly, because he was under the impression that all the agent desired to do was to recover the stolen weapon, and that nothing more would happen to him if he turned-over such weapon to the agent.

Mr. Haun and the officers went to the defendant's trailer home. They entered the Haun home, and the defendant took from its rack on the wall the aforementioned Thompson submachine gun and delivered it to Mr. Fulton. It was stipulated that such weapon was taken by the federal agent without a search warrant's having issued.

The defendant claims that he would never have waived his right to the assistance of counsel or given his consent for the searches of his home and automobile had he known that he would be prosecuted as a result of the fruit of his statements and such searches. He offered no evidence that he was promised freedom from prosecution in return for either his statement or his consents to search his property; indeed, each of the forms he executed include a statement that no promises had been made to induce him to execute any of them.

 Mr. Haun's rights under the Constitution, Fourth Amendment, were personal and could be waived by him. *United States v. Strouth*, D.C.Tenn. (1970), 311 F.Supp. 1088, 1090[3]. Whether he waived such right herein is a question of fact. *Ibid.*, 311 F.Supp. at 1092[7]. The Court finds from clear and convincing evidence herein that Mr. Haun consented unequivocally, specifically, and voluntarily to the search involved without any duress or coercion, actual or implied. " * * * Consent that is unequivocal, specific and voluntarily given without duress or coercion, actual or implied, is effective as a waiver of any objection to the admission of evidence so obtained. *United States v. Strough*, D.C.Tenn. [*supra*]. * * * " *United States v. Ward*, D.C.Tenn. (1973), 365 F.Supp. 1342, 1344[3]. While it is true, as contended by the defendant, that coercion may be exerted in a psychological form, *Phelper v. Decker*, C.A.5th (1968), 401 F.2d 232, 236[3]; *Cipres v. United States*, C.A.9th (1965), 343 F.2d 95, 98, such does not appear to be the case here. Rather, it seems reasonable to infer that Mr. Haun obtained this weapon at a time when he may not have realized that his possession of it without the required registration was a violation of the law; that he learned afterward that it was; and that, when he recognized that a federal officer had information concerning his unlawful possession of an unregistered weapon, and that his illegal act was likely to be discovered and proved, he concluded in his own

mind that his best course would be to cooperate fully with the officers in their investigation with the hope that, under those circumstances, they *might* decide not to prosecute him for his unlawful possession of an unregistered machine gun. In short, the Court finds that the consents given by Mr. Haun were not " * * * obtained by psychological trickery * * * " of him as he insists on the basis of anything the officers said or did but upon the probable operation of his own mental processes.

■ The Court finds that the FBI agent's attention was called to a possible violation of federal law which he was obliged to investigate forthwith; that the agent interviewed this defendant as a person suspected of having committed such crime; that, before interrogating the defendant, the agent advised him fully of his rights in such an investigation; that the defendant admitted belatedly his complicity in the crime under investigation; that the agent then sought the defendant's consent for searches of his home and automobile, which the defendant gave; and that the defendant located the weapon and surrendered it to the agent. The Court finds nothing coercive in any manner in any one or more of these actions by the agent. In fact, the agent punctiliously "dotted all the i's and crossed all the t's."

■ Although the defendant was in the custody of authorities of the state of Tennessee at the time of his consents, this fact does not necessarily render his consents involuntary. *Davis v. United States* (1946), 328 U.S. 582, 587, 66 S.Ct. 1256, 90 L.Ed. 1453, 1456, rehearing denied (1946), 329 U.S. 824, 67 S.Ct. 107, 91 L.Ed. 700. Such voluntariness is reflected by the defendant's earlier incriminatory statement, *State v. Guest* (1921), 118 S.C. 130, 110 S.E. 112; *Rhodes v. State* (1938), 135 Tex.Crim. 422, 120 S.W.2d 1070, and his assisting the officers actively in locating and seizing the weapon, *Windsor v. United States*, C.C. A.6th (1923), 286 F. 51, 55[5], certiorari denied (1923), 262 U.S. 748, 43 S.Ct. 523, 67 L.Ed. 1212.

From all which, the motion of the defendant hereby is

OVERRULED.